IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 17, 2018 Session

## MATTHEW TOLLIVER ET AL. v. TELLICO VILLAGE PROPERTY OWNERS ASSOCIATION, INC.

Appeal from the Circuit Court for Loudon County
No. 2015-CV-182    Michael S. Pemberton, Judge

_____

### No. E2018-00090-COA-R3-CV

_____

This litigation finds its genesis in a water pipeline break that caused damage to residential property. At the time of the break, Joseph and Martha Mosakowski were the title owners of the damaged property. Matthew Tolliver, who was purchasing the property under a contract for deed, resided in the home. Mr. Tolliver filed a complaint against Tellico Village Property Owners Association, Inc. (defendant) alleging negligence and breach of contract. The Mosakowskis were later joined to the suit as co-plaintiffs. Pursuant to a court order, the Mosakowskis filed their own complaint, which contained similar factual allegations and asserted the same causes of action as alleged in Mr. Tolliver's complaint. Defendant filed a motion to dismiss the Mosakowskis' negligence claim. The defendant also filed a motion for summary judgment on all claims asserted by Mr. Tolliver and the Mosakowskis. Mr. Tolliver consented to the entry of an agreed order granting summary judgment to the defendant as to all of his claims.[1] The Mosakowskis, however, contested defendant's motions. Ultimately, the trial court granted defendant's motion to dismiss the Mosakowskis' negligence claim because the court determined that the statute of limitations had expired. In a separate order, the court granted the defendant summary judgment on the Mosakowskis' breach of contract claim because the court determined that there was no consideration for the alleged contract. The court denied summary judgment as to the Mosakowskis' negligence claim because the court's order dismissing that claim rendered the issue moot. The Mosakowskis appeal. We affirm the trial court's dismissal of the negligence claim. Although the court erred by dismissing the negligence claim pursuant to Tenn. R. Civ. P. 12.02(6), we find that ruling to be harmless because summary judgment was proper under Tenn. R. Civ. P. 56. Finally, we reverse the trial court's grant of summary judgment on the breach of contract claim and remand for further proceedings.

_____

[1] Accordingly, Mr. Tolliver chose not to participate in this appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed in Part and Reversed in Part; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Thomas M. Leveille, Knoxville, Tennessee, for the appellants, Martha Mosakowski and Joseph Mosakowski.

Kevin C. Stevens, Knoxville, Tennessee, for the appellee, Tellico Village Property Owners Association, Inc.

**OPINION**

**I.**

The plaintiffs alleged that on July 16, 2014, a water pipeline break caused damage to their residential property in Tellico Village. As previously noted, Mr. Tolliver resided in the home. He was in the process of purchasing the property from the Mosakowskis under a "contract for deed."

On December 9, 2015, Mr. Tolliver filed a complaint against defendant seeking damages for the loss of personal and real property. He alleged that defendant was liable in negligence for failing to properly maintain the water pipeline. Mr. Tolliver also alleged that defendant was liable for breach of contract. Specifically, Mr. Tolliver alleged that representatives of defendant promised the Mosakowskis that defendant would pay for all repairs to the property, a commitment that defendant failed to honor. Mr. Tolliver claimed to be a third-party beneficiary to this alleged oral contract.

Although Mr. Tolliver's complaint stated that the Mosakowskis were "necessary parties," his complaint did not name them as such. Months later, Mr. Tolliver filed a motion to amend his complaint, a proposed amended complaint, and a motion to join the Mosakowskis as parties.[2] Mr. Tolliver's proposed amended complaint did not name the Mosakowskis as co-plaintiffs. Instead, the amended complaint simply reiterated the allegation that "the Mosakowskis are necessary parties in order for the Court to give full relief and Plaintiff moves the Court [to] join them in this case." On June 13, 2016, the trial court entered an order providing that

---

[2] Although Mr. Tolliver's "Motion to Join Third Part[ies]" did not specify which rule of civil procedure he was invoking, his motion tracks the language of Tenn. R. Civ. P. 19.01, which concerns the compulsory joinder of necessary parties. Because the Mosakowskis were joined as parties pursuant to Rule 19.01, we will not consider whether joinder would have been appropriate under Tenn. R. Civ. P. 17.01.

upon stipulation of the parties, [Mr. Tolliver's] Motion to Amend Complaint and Motion to Join Third Part[ies] are GRANTED. [Mr. Tolliver's] Amended Complaint is deemed filed, and counsel for [Mr. Tolliver] shall have a summons issued and process served upon Joe and Martha Mosakowski to join them as parties to this action.

(Capitalization in original).

On September 23, 2016, the Mosakowskis were served with a summons and Mr. Tolliver's amended complaint. Inexplicably, the summons named the Mosakowskis as defendants. Accordingly, on May 22, 2017, the Mosakowskis filed a "motion to realign the parties." In their motion, the Mosakowskis claimed to hold legal title to the property in question and sought "to be aligned as Plaintiffs seeking recovery." The Mosakowskis were "realigned" as plaintiffs pursuant to an agreed order entered on July 27, 2017. Shortly thereafter, the trial court entered another agreed order that directed the Mosakowskis "to file a Complaint in this matter within 14 days from the entry of the Court's Order."

Pursuant to the court's order, the Mosakowskis filed their own complaint on August 23, 2017. The pleading was styled as a "complaint" and the caption listed only "Martha Mosakowski and Joseph Mosakowski" as plaintiffs. However, the complaint was filed under the same docket number as the civil action initiated by Mr. Tolliver. The Mosakowskis' complaint contained the following factual allegations:

> 1. The Plaintiffs, Martha and Joseph Mosakowski (hereinafter referred to as "Mosakowskis"), own property upon which they built and house located at 210 Wahahu [sic] Lane, Loudon, Tennessee. The Mosakowskis hold legal title to this property.
>
> 2. At all times pertinent hereto, Matthew Tolliver leased the property with an option to purchase.[3]
>
> 3. The Defendant, Tellco [sic] Village Property Owners Association (hereinafter referred to as "Tellco [sic] Village POA"), is an organization created by developers and owners of Tellco [sic] Village to protect, inspect, repair and maintain all common areas and public utilities, to include water

---

[3] Although the Mosakowskis' complaint speaks of a "lease[ ] . . . with an option to purchase," they later conceded that Mr. Tolliver was purchasing the property under a "contract for deed." This is not significant to the issues presented in this appeal.

pipelines throughout Telco [sic] Village.

4. On July 16, 2014, a section of the underground water pipelines referred to above, burst. Several thousand gallons of water erupted from the ground and flooded the Mosakowskis' yard and house causing extensive damages.

5. Upon information and belief, the water pipelines along Wahahu [sic] Lane have broken on several occasions previously. Tellco [sic] Village POA has knowledge of the deteriorating or defective nature of these water pipelines.

6. Representatives of Tellco [sic] Village POA assured the Mosakowskis that they would pay for damage, but have failed to follow through with that agreement.

Count I of the complaint alleged that "[a]t all times pertinent hereto, [defendant] and the Mosakowskis had entered into a contractual agreement," and that defendant had breached the same. Count II alleged that defendant was liable in negligence for breaching its "duty to maintain, repair, service, troubleshoot and generally keep the water pipelines in good and working order."

On October 16, 2017, defendant filed a motion to dismiss the Mosakowskis' negligence claim. First, defendant argued that the Mosakowskis lacked standing to sue. Defendant also argued that the Mosakowskis' complaint was filed beyond the three-year period of the statute of limitations. The Mosakowskis argued that they did have standing and that their complaint should relate back to the filing of Mr. Tolliver's original complaint pursuant to Tenn. R. Civ. P. 15.03.

On October 20, 2017, defendant also filed a motion for summary judgment "on all claims asserted by the Plaintiffs, Matthew Tolliver, Joe Mosakowski, and Martha Mosakowski[.]" With respect to the negligence claim, defendant argued that plaintiffs had not presented sufficient evidence of defendant's specific duty of care or evidence of how defendant breached that duty of care. With respect to the breach of contract claim, defendant argued that plaintiffs failed to present any evidence of consideration for the alleged oral contract.

After defendant filed its motion for summary judgment, the trial court entered an agreed order stating that Mr. Tolliver and defendant "have announced to the Court that they are in agreement that [defendant's] Motion for Summary Judgment filed on October 20, 2017 should be granted as to Tolliver, and that Tolliver's remaining claims against [defendant] for breach of contract and negligence should be dismissed with prejudice." The Mosakowskis, however, filed a memorandum of law in opposition to defendant's

motion for summary judgment. In their memorandum, the Mosakowskis attempted to clarify that their breach of contract claim was supported by the breach of an alleged oral contract *as well as* defendant's articles of incorporation and bylaws, which arguably operate as a written contract. For the first time, the Mosakowskis attached defendant's articles of incorporation and bylaws as an exhibit. The Mosakowskis also attached two reports prepared by defendant's third-party water loss control company purporting to show that defendant had prior notice of leaks in the community's water pipeline system.

After several hearings on defendant's motions, the trial court contemporaneously entered two orders. In one order, the court found that the Mosakowskis had standing to sue; the same order, however, granted defendant's motion to dismiss the Mosakowskis' negligence claim because the court determined that the statute of limitations had expired. The court found that the Mosakowskis' complaint did not relate back to the filing of Mr. Tolliver's original complaint. In the other order, the court granted summary judgment on the Mosakowskis' breach of contract claim because the court determined that there was no evidence of consideration for the alleged oral contract. The court declined to consider defendant's articles of incorporation and bylaws as evidence of a breach of contract because the Mosakowskis' complaint did not put the defendant on notice of that theory of recovery. The Mosakowskis appealed.

## II.

The Mosakowskis raise the following two issues, which we have restated slightly:

> Whether the trial court erred in granting defendant's motion
> to dismiss the negligence claim.

> Whether the trial court erred in granting defendant's motion
> for summary judgment on the breach of contract claim.

If we determine that the trial court erred in dismissing the Mosakowskis' negligence claim on statute of limitations grounds, defendant asks us to consider whether it was harmless error because the negligence claim would have been dismissed on summary judgment.[4]

---

[4] Defendant does not ask us to review the trial court's ruling on the issue of standing. Accordingly, we express no opinion on that issue. *See* Tenn. R. App. P. 13(b) ("Review generally will extend only to those issues presented for review."). Although we do have a responsibility to consider whether the trial court had subject matter jurisdiction, *see id.*, standing is not a jurisdictional prerequisite to bringing common-law claims such as negligence and breach of contract. *See **Bowers v. Estate of Mounger**, 542 S.W.3d 470, 480 (Tenn. Ct. App. 2017) (citations omitted).

## III.

We begin by considering whether the trial court erred in granting defendant's motion to dismiss the negligence claim on the ground that the statute of limitations had expired. The Supreme Court has stated that

> [a] Tenn. R. Civ. P. 12.02(6) motion tests only the legal sufficiency of the plaintiff's complaint, not the strength of the plaintiff's proof. **Highwoods Props., Inc. v. City of Memphis**, 297 S.W.3d 695, 700 (Tenn. 2009). Thus, courts ruling on a Tenn. R. Civ. P. 12.02(6) motion " 'must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences.' " **Webb v. Nashville Area Habitat for Humanity, Inc.**, 346 S.W.3d 422, 426 (Tenn. 2011) (quoting **Tigg v. Pirelli Tire Corp.**, 232 S.W.3d 28, 31-32 (Tenn. 2007)). The determination of whether a suit should be dismissed based on the statute of limitations presents a question of law which we review de novo with no presumption of correctness. **Fahrner v. SW Mfg., Inc.**, 48 S.W.3d 141, 144 (Tenn. 2001).

**Redwing v. Catholic Bishop for Diocese of Memphis**, 363 S.W.3d 436, 455-56 (Tenn. 2012).

In Tennessee, "[a]ctions for injuries to personal or real property" must be "commenced within three (3) years from the accruing of the cause of action." Tenn. Code Ann. § 28-3-105 (2017). Here, it is undisputed that the plaintiffs' cause of action accrued on July 16, 2014, the date of the alleged water pipeline break. Thus, plaintiffs were required to "commence[ ]" their action by July 16, 2017. Mr. Tolliver filed his original complaint on December 9, 2015; however, the Mosakowskis did not file their complaint until August 23, 2017, one week after the statute of limitations had expired.

The Mosakowskis argue that their complaint should relate back to filing of Mr. Tolliver's original complaint pursuant to Rule 15 of the Tennessee Rules of Civil Procedure.[5] Tenn. R. Civ. P. 15.01 provides, in pertinent part, that "a party may amend the party's pleadings . . . by leave of court; and leave shall be freely given when justice so

---

[5] We pause to note that Tenn. R. Civ. P. 17.01 also contains a provision allowing for the relation back of pleadings that join or substitute "the real party in interest." Tenn. R. Civ. P. 17.01 ("[S]uch ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest."). As discussed in a previous footnote, however, the Mosakowskis were joined pursuant to Rule 19.01, not Rule 17.01; therefore, we decline to consider whether relation back would have been appropriate under Rule 17.01.

requires. . . ." Tenn. R. Civ. P. 15.03 further provides that

> [w]henever the claim or defense asserted in amended pleadings arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party or the naming of the party by or against whom a claim is asserted relates back if the foregoing provision is satisfied and if, within the period provided by law for commencing an action or within 120 days after commencement of the action, the party to be brought in by amendment (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Defendant first argues that the Mosakowskis' complaint is not an "amended pleading" within the meaning of Rule 15.03. Instead, defendant contends that the Mosakowskis' complaint "was an original pleading meant to initiate the Mosakowskis' own private cause of action for their own damages . . . ." In support of this argument, defendant points out that the pleading is labeled as a "complaint" and that Mr. Tolliver is not referenced as a co-plaintiff in the caption or the body of the pleading.

Defendant's argument is without merit. The Mosakowskis' decision to style their pleading as a "complaint" and their failure to name Mr. Tolliver as a co-plaintiff likely stems from their desire to comply with the trial court's instruction "to file a Complaint in this matter within 14 days from the entry of the Court's Order." In any event, "[i]t is well established that the courts of this state look to the substance rather than the form of pleadings in determining their nature and effect." *Barrett v. Chesney*, No. W2014–01921–COA–R9–CV, 2015 WL 5679922, at *7 (Tenn. Ct. App., filed Sept. 28, 2015) (citations omitted). The title of a pleading is not dispositive. *Reynolds v. Tognetti*, No. W2010–00320–COA–R3–CV, 2011 WL 761525, *7 (Tenn. Ct. App., filed Mar. 4, 2011) ("[A] court is not bound by the title of a motion but should give effect to its substance according to the relief it seeks."). In addition, "[t]he caption requirement of [Tenn. R. Civ. P.] 10 is merely for identification purposes, and does not control who is a party in the action." *Goss v. Hutchins*, 751 S.W.2d 821, 824 (Tenn. 1988) (citations omitted).

Considering the substance of the pleading, as well as its procedural context, it appears to us that the Mosakowskis' "complaint" was, in reality, an amendment to Mr.

- 7 -

Tolliver's existing complaint.[6]  By agreed order, the Mosakowskis were joined as parties, and realigned as plaintiffs, *in the existing lawsuit*.  Their "complaint" was also filed under the same docket number as the existing lawsuit.  Accordingly, despite its title and caption, we conclude that the Mosakowskis' pleading was, in substance, an amendment to Mr. Tolliver's original complaint and was therefore an "amended pleading" within the meaning of Rule 15.03.  *Cf.* ***In re Estate of Sutton***, No. E2013–00245–COA–R3–CV, 2013 WL 6669385, at \*5 (Tenn. Ct. App., filed Dec. 17, 2013), *perm. app. denied* (Tenn. 2014) (holding that a pleading was *not* an amendment to an existing complaint, in part, because the pleading was filed "under a new docket number" and the person filing the pleading "did not request that she be joined [as a party].").

The question then becomes whether the Mosakowskis' amendment should relate back to the filing of Mr. Tolliver's original complaint.  The first sentence of Rule 15.03 provides that

> [w]henever the claim or defense asserted in amended pleadings arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

Tenn. R. Civ. P. 15.03.  This requirement is easily satisfied.  The Mosakowskis' claims arise from the same alleged water pipeline break that occurred on July 16, 2014, in Tellico Village.

The second sentence of Rule 15.03 sets forth additional requirements for the relation back of "[a]n amendment changing the party or the naming of the party by or against whom a claim is asserted . . . ."  The second sentence of Rule 15.03 applies here because the pleading under consideration adds the Mosakowskis as additional plaintiffs ("part[ies] by . . . whom a claim is asserted[.]").  Such amendments only relate back

> if the foregoing provision is satisfied and if, within the period provided by law for commencing an action or within 120 days after commencement of the action, the party to be brought in by amendment (1) has received such notice of the

---

[6] "[A]n 'amendment to' a complaint merely modifies the existing complaint, which remains before the trial court as modified." ***Shell v. Williams***, No. M2013–00711–COA–R3–CV, 2014 WL 118376, at \*2 n.4 (Tenn. Ct. App., filed Jan. 14, 2014) (citing ***McBurney v. Aldrich***, 816 S.W.2d 30, 33 (Tenn. Ct. App. 1991)).  This is distinguished from an "amended complaint," which "supersedes and destroys the original complaint as a pleading." ***Id.***  It would be inappropriate to characterize the Mosakowskis' pleading as an "amended complaint" because there is no evidence that their filing was intended to "supplant" the claims of Mr. Tolliver.  *See **id.***  To the contrary, Mr. Tolliver remained a party to the lawsuit for three more months.

- 8 -

institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Tenn. R. Civ. P. 15.03. These additional requirements seem to be particularly adapted to the addition and substitution of new *defendants*. We have consistently held, however, that Rule 15.03 also permits the relation back of amendments adding or substituting proper party *plaintiffs*, even after the expiration of the statute of limitations. *See, e.g.*, *Lane v. Daniel*, No. W2012-01684-COA-R3-CV, 2013 WL 2325620, at *5 (Tenn. Ct. App., filed May 29, 2013) ("Rule 15.03 expressly allows relation back when the change is to the party asserting the action[.]"); *Biscan v. Brown*, No. M2001-02766-COA-R3-CV, 2003 WL 22955933, at *4 (Tenn. Ct. App., filed Dec. 15, 2003), *aff'd*, 160 S.W.3d 462 (Tenn. 2005). In such cases, relation back is permitted when (1) "the defendant received adequate notice of the claim against him"; (2) "the relation back of such amendment would [not] unfairly prejudice the defendant"; and (3) "there is an 'identity of interest' between the original party plaintiff and the new party plaintiff." *Biscan*, 2003 WL 22955933, at *4 (quoting *Osborne Enters., Inc. v. City of Chattanooga*, 561 S.W.2d 160, 164 (Tenn. Ct. App. 1977)).[7]

In *Osborne*, a corporation brought an inverse condemnation action seeking damages for the loss of air space and the cutting of trees on the property of its wholly-owned subsidiary. 561 S.W.2d at 162. The trial court allowed the corporation to amend its complaint to include its wholly-owned subsidiary as a co-plaintiff after the expiration of the one-year statute of limitations. *Id.* at 163. On appeal, this Court considered whether the trial court erred in allowing the amendment to relate back to the corporation's original complaint pursuant to Rule 15.03. *Id.* The Court began by stating that "Rule 15.03 should be liberally construed and applied. It was designed so cases would be determined on their merits and not on rigid technicalities." *Id.* The Court then applied the three-part test recited above:

Here, the plaintiffs' original complaint sufficiently identifies the property allegedly damaged by defendants so as to prevent any unfair prejudice to the defendants in bringing in the new plaintiff who had record title to the land. The theories of recovery, the type and extent of damage occurring and the type of recovery sought are clearly apparent from the

---

[7] This three-part test, first articulated by this Court in *Osborne*, is derived from federal case law construing Fed. R. Civ. P. 15(c). The test closely mirrors the requirements set forth in the latter portion of Tenn. R. Civ. P. 15.03. It is more easily applied in cases where an amendment seeks to add or substitute a plaintiff rather than a defendant.

complaint. There is a definite identity of interest between the original plaintiff and the new plaintiff in that East Ridge is pled to be a wholly owned subsidiary of Osborne. Consequently, the three primary considerations in determining whether the amended complaint relates back to the original complaint have been sufficiently satisfied to allow the amendment. Although the defendant must now defend a claim which was thought the mere passage of time had barred, statutes of limitations do not afford such an automatic insulation from suit by such a mechanical procedure. We find the trial judge did not err in allowing the amendment to relate back to the filing of the original complaint.

*Id.* at 164.

We now consider the present case in light of the three-pronged test articulated by the *Osborne* Court. The first prong of the test is whether "the defendant received adequate notice of the claim against him." *Id.* at 164. With respect to this part of the test, the *Osborne* Court noted:

Not only must the adversary have notice about the operational facts, but it must have had fair notice that a legal claim existed in, and was in effect being asserted by, the party belatedly brought in.

*Id.* (quoting *Williams v. United States*, 405 F.2d 234, 236-38 (5th Cir. 1968)).

Here, Mr. Tolliver's complaint clearly put defendant on notice of the alleged water pipeline break – the common set of operational facts giving rising to the Mosakowskis' claims. The defendant also had notice "that a legal claim existed in" the Mosakowskis because Mr. Tolliver's complaint alleged that the Mosakowskis held legal title to the property and that they were necessary parties to the lawsuit. Defendant even consented to the entry of an agreed order joining the Mosakowskis as parties. Defendant argues, however, that it did not have notice that "a legal claim . . . was in effect *being asserted by*" the Mosakowskis until the filing of their amendment. We disagree. Defendant had notice that the Mosakowskis would eventually assert a claim against it as early as May 25, 2016, when defendant orally stipulated that the Mosakowskis should be joined as parties. If there was any doubt about whether the Mosakowskis would actually "assert" their legal claims, that doubt was eliminated on May 22, 2017, when the Mosakowskis filed a motion "to be aligned as Plaintiffs seeking recovery."[8] It is true that the

---

[8] Defendant points out that this motion did not include an attached pleading that affirmatively set

Mosakowskis waited several months before actually filing their amendment to Mr. Tolliver's complaint, "[b]ut neither limitations nor laches affords such an automatic insulation in so mechanical a way." *Williams*, 405 F.2d at 238. Thus, the first prong of the test is satisfied.

The second prong of the *Osborne* test is whether "the relation back of such amendment would unfairly prejudice the defendant." 561 S.W.2d at 164. Defendant complains that the Mosakowskis' amendment was filed three months prior to trial and after the close of discovery. As a result, defendant claims that it "was foreclosed from being able to conduct discovery on the Mosakowskis' newly-asserted claims." We are not persuaded that the timing of the Mosakowskis' amendment prejudiced defendant. As in *Osborne*, Mr. Tolliver's "original complaint sufficiently identifies the property allegedly damaged by defendant[] so as to prevent any unfair prejudice to the defendant[] in bringing in the new plaintiff who had record title to the land." Also like *Osborne*, the Mosakowskis' amendment alleged identical "theories of recovery" – negligence and breach of contract. The Mosakowskis' amendment did not allege materially different facts or allege any additional damages. Defendant could not have been prejudiced by the relation back of an amendment that merely re-alleged the same facts, the same causes of action, and the same damages. Consequently, the second prong of the *Osborne* test is satisfied.

The third prong of the *Osborne* test is whether "there is an 'identity of interest' between the original party plaintiff and the new party plaintiff." 561 S.W.2d at 164. "An identity of interest exists when the plaintiff sought to be added is so closely identified with the original plaintiff that permitting the new party to enter will not be prejudicial to the defendant." *Lane*, 2013 WL 2325620, at *12. Again, we perceive no reason why the joinder of the Mosakowskis or the relation back of their amendment would prejudice defendant in any way. Mr. Tolliver and the Mosakowskis both have an interest in the same parcel of real property. Under our precedents, the Mosakowskis, as record title owners, are entitled to all damages arising out of a meritorious claim and must hold any damages in excess of their interest in trust for the benefit of Mr. Tolliver, the equitable owner. *See Parker v. Tennessee Farmers Mut. Ins. Co.*, No. 141, 1988 WL 138923, at *1 (Tenn. Ct. App., filed Dec. 30, 1988).[9] Thus, the plaintiffs' interests (as against defendant) are virtually indistinguishable.

---

forth the Mosakowskis' specific causes of action. Although that is true, the motion nevertheless confirmed that "a legal claim . . . was in effect being asserted by" the Mosakowskis. *See Osborne*, 561 S.W.2d at 164.

[9] We recognize that *Parker* involved an insured seller's claim against the seller's insurance company. Nevertheless, we think the principles articulated in that case are equally applicable when a record title owner brings an action against other third-party defendants. Defendant admitted as much in its November 13, 2017 motion for judgment on the pleadings.

- 11 -

For the foregoing reasons, we conclude that the Mosakowskis' amendment should have related back to the filing of Mr. Tolliver's original complaint pursuant to Tenn. R. Civ. P. 15.03. Accordingly, the trial court erred in granting defendant's motion to dismiss the Mosakowskis' negligence claim on the ground that it was time-barred.

## IV.

We now turn to defendant's alternative argument that the trial court's dismissal of the negligence claim under Tenn. R. Civ. P. 12.02(6) was harmless error.[10] Defendant recites the general rule that

> [a] final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process.

Tenn. R. App. P. 36(b). Consistent with this rule, our courts have long held that "if the [t]rial [j]udge reached the right result for the wrong reason, there is no reversible error." **Shutt v. Blount**, 249 S.W.2d 904, 907 (Tenn. 1952) (citations omitted).

Defendant argues that if the trial court had not dismissed the Mosakowskis' negligence claim pursuant to Rule 12.02(6), it would have granted defendant's then-pending motion for summary judgment on that claim. Defendant cites cases from other jurisdictions which have held that a trial court's premature dismissal for failure to state a claim is harmless error when summary judgment would have otherwise been appropriate. *See, e.g.*, **Amasia Acoustics, LLC v. GN Hearing Care Corp.**, No. A08–0139, 2008 WL 5137087, at *5 (Minn. Ct. App., filed Dec. 9, 2008). The parties have not cited, and we have not identified, any Tennessee cases applying the harmless error doctrine in this way. Nevertheless, we agree that premature dismissal under Rule 12.02(6) is harmless error if, at the time of the trial court's ruling, (1) there was a pending motion for summary judgment, (2) the non-moving party had a full and fair opportunity to respond, and (3) summary judgment is appropriate as a matter of law.

Here, defendant filed a motion for summary judgment shortly after filing its motion to dismiss. The Mosakowskis submitted a response in opposition to defendant's motion that included additional discovery materials purporting to establish the existence of genuine issues of material fact. The trial court also held a hearing on the motion for summary judgment. Accordingly, if summary judgment was appropriate as a matter of

---

[10] At the outset of our discussion, we note that counsel for the Mosakowskis did not submit a reply-brief, and thus did not provide a written response to defendant's arguments relating to this issue.

law, then the trial court's dismissal of the negligence claim pursuant to Rule 12.02(6) was harmless error.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The Supreme Court has ruled that "when the moving party does not bear the burden of proof at trial," as is the case here,

> the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense.

*Rye v. Women's Care Center of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015). Once the moving party has satisfied its burden of production, in order to survive summary judgment, the non-moving party

> may not rest upon the mere allegations or denials of the adverse party's pleading, but his or her response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Tenn. R. Civ. P. 56.06. This may be accomplished by:

> (1) pointing to evidence establishing material factual disputes that were over-looked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06.

*Martin v. Norfolk Southern Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) (quoting *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998)).

Here, in order to prevail on their negligence claim, the Mosakowskis "must establish the following essential elements: '(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause.' " *Grogan v. Uggla*, 535 S.W.3d 864, 871 (Tenn. 2017) (quoting *Giggers v. Memphis*

- 13 -

***Hous. Auth.***, 277 S.W.3d 359, 364 (Tenn. 2009)). Defendant argues that summary judgment is appropriate because there is no genuine issue of material fact and because defendant has "demonstrat[ed] that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense." *See* ***Rye***, 477 S.W.3d at 264. Specifically, defendant argues that the Mosakowskis failed to present sufficient evidence of (1) the applicable standard of care and (2) evidence of conduct amounting to a breach of that standard of care.

The Mosakowskis' amendment alleged that defendant "owed a duty to maintain, repair, service, troubleshoot and generally keep the water pipelines in good and working order." Defendant argues, however, that the foregoing allegation is insufficient evidence of defendant's duty of care. According to defendant, the Mosakowskis were required to identify an individual who could provide *expert testimony* regarding defendant's *specific* duty of care as an entity entrusted with maintaining a water distribution system.

Generally, "[t]he standard of care which a party must follow is a question of law to be decided 'based on evidence and mixed considerations of logic, common sense, and public policy.'" ***Crumley v. City of Smyrna***, No. 01A01-9607-CV-00316, 1997 WL 24849, at *4 (Tenn. Ct. App., filed Jan. 24, 1997) (quoting ***Allen v. Baggett***, 905 S.W.2d 190, 191 (Tenn. Ct. App. 1995)). However, when negligence is not "obvious and readily understandable by an average layperson, expert testimony will be required to demonstrate the applicable standard of care and breach of that standard." ***Barkes v. River Park Hosp., Inc.***, 328 S.W.3d 829, 833 n.2 (Tenn. Ct. App. 2010) (citations omitted). Expert testimony is often required in cases involving professional liability, such as medical malpractice and legal malpractice, because such cases often "require[ ] scientific or technical analysis or discussion." ***Martin v. Sizemore***, 78 S.W.3d 249, 273 (Tenn. Ct. App. 2001) (citing ***Seavers v. Methodist Med. Ctr.***, 9 S.W.3d 86, 92 (Tenn. 1999)).

Whether expert testimony is required to establish a water distributor's applicable duty of care and breach of the same appears to be a matter of first impression in this state. Previous Tennessee cases involving negligence claims against water distributors have not squarely addressed this issue. *See generally* ***Gibson Greetings, Inc. v. Associated Warehouses, Inc.***, No. 02A01-9204-CV-00116, 1993 WL 188299 (Tenn. Ct. App., filed June 3, 1993); ***Graham v. Greeneville Water & Light System***, No. 136, 1990 WL 6373 (Tenn. Ct. App., filed Jan. 31, 1990); ***Summit Hill Associates v. Knoxville Utilities Bd.***, 667 S.W.2d 91 (Tenn. Ct. App. 1983). Defendant, however, directs our attention to cases from four states and the District of Columbia in which courts have held that expert testimony *is* required to demonstrate a water distributor's applicable standard of care.

The Utah Supreme Court recently considered a case extremely similar to the case at bar. ***Jenkins v. Jordan Valley Water Conservancy Dist.***, 321 P.3d 1049, 1053 n.7 (Utah 2013). In ***Jenkins***, a water pipeline ruptured causing damage to plaintiffs' home. ***Id.*** at 1050. The plaintiff homeowners brought a negligence action against the water

conservatory district that was responsible for operation of the water pipeline. *Id.* at 1050. After the close of discovery, the defendant moved for summary judgment, arguing that "the plaintiff homeowners could not prevail on their negligence claim because they had failed to designate an expert to testify regarding the applicable standard of care." *Id.* The trial court granted the motion for summary judgment on that ground. *Id.* "The court of appeals reversed, concluding that expert testimony was unnecessary because the [defendant] itself had previously determined that the pipeline should be replaced . . . ." *Id.* The Utah Supreme Court reversed the decision of the court of appeals and held that the trial court correctly dismissed the case on summary judgment. *Id.*

In so holding, the Utah Supreme Court explained:

> An internal determination that a pipeline should be replaced does not establish a tort law duty to do so. Internal decisions may be made for any number of reasons—convenience, caution, maximization of budget, mistake—having little to do with the standard of care. . . .
>
> Instead, the critical issue is whether the applicable standard of care required the District to replace the pipeline near the Jenkins home. . . . And we cannot see how the Jenkinses could show that it did without expert testimony.

*Id.* at 1051-52. The court proceeded to explain why expert testimony was necessary to establish the applicable standard of care:

> Lay persons are not well equipped to decide whether a cast-iron pipe has gotten so old that it requires replacement. Such pipes have no pre-determined lifespan. According to expert testimony offered in other cases, the useful life of a cast-iron pipe may vary widely, depending on a range of factors such as soil conditions, burial depth, and the extent of any earth movement in the area. *See, e.g.*, *I.M. of Atl. City v. District of Columbia*, 356 F. Supp. 487, 489-90 (D.D.C. 1973) (providing substantial discussion, based on expert testimony, about the indeterminate lifespan of cast-iron pipes and the many factors that bear on this matter); *Grace & Co. v. City of Los Angeles*, 168 F. Supp. 344, 346, 348–49 (S.D. Cal. 1958) (explaining that one segment of cast-iron pipe might require replacement, whereas another one installed at the same time might not).

\*     \*     \*

- 15 -

> Physical indicators of pipeline degradation are equally inadequate to the task of indicating that a pipeline had reached the state of requiring replacement. Breakage history, for example, would indicate only that a particular pipe had an imperfection. But that would shed little light on whether the applicable standard of care required replacement.
>
> A history of breakage is not a mandate for replacement. Often the prudent response will be repair, not outright replacement. And the repair/replace decision is inherently complex and case-specific, requiring the detail necessary to perform the cost-benefit calculus and the sophistication necessary to interpret it.
>
> In the absence of expert assistance, jurors would not likely possess the information or understanding necessary to make such assessments. . . . They would not likely know, for example, the background rate of "normal" breakages, and thus would have no non-speculative benchmark against which to assess any breakage history. Nor would they have any meaningful way to assess whether or to what extent past breakages portended future ones, or called for replacement rather than repair.

*Id.* at 1052-53 (footnotes omitted).

As defendant observes, courts in other jurisdictions have reached the same conclusion for similar reasons. *See **Dist. of Columbia v. Arnold & Porter***, 756 A.2d 427, 429, 434 (D.D.C. 2000) (holding "that expert testimony is required to establish the national standard of care for the operation and maintenance of a municipal water system and the handling of leaks in that system" because such activities "are not subjects within the common knowledge of jurors"); ***Frankenmuth Ins. v. City of Hickory***, 760 S.E.2d 98 (N.C. Ct. App. 2014).

In ***Frankenmuth Insurance***, a water pipe leading to a sprinkler system ruptured, causing property damage. 760 S.E.2d at 99. Plaintiff filed a negligence claim against the city responsible for operating the municipal water system. *Id.* The trial court granted summary judgment for the city. *Id.* The court of appeals affirmed because plaintiff failed to present expert testimony establishing the defendant's applicable standard of care. *Id.* at 100. According to the court

> the alleged wrongdoing of defendant here required the

exercise of professional judgment regarding a 'reasonable' level of water pressure in a municipal water system, the skill needed to install a 'loop' system, and the expertise to install or recommend installing a pressure-relieving device at the terminal ends of the system. Because these claims could not be properly evaluated with the "common knowledge and experience" of the jury, plaintiff bore the burden of producing expert testimony to establish the proper standard of care to which defendant should have been held.

*Id.* at 102. Courts in Virginia and California have also held that plaintiffs must present expert testimony of a water distributor's applicable standard of care. ***Flaherty v. Legum & Norman Realty, Inc.***, No. 1:05-1492, 2007 WL 4694346, at *14 (E.D. Va., filed Jan. 4, 2007) (wrongful death action involving an allegation that decedent was poisoned by water supplied by defendant); ***Harris v. 3075 Wilshire, LLC***, B223826, 2014 WL 881161, at *4 (Cal. Ct. App., filed Mar. 6, 2014) (premise liability action involving an allegation that plaintiff became sick after being exposed to bacteria from water supplied by defendant).

Recognizing that the aforementioned cases merely serve as persuasive authority, we fully adopt their position that a plaintiff must ordinarily present expert testimony of a water distributor's applicable duty of care in order to survive summary judgment.[11] In this case, the Mosakowskis simply alleged a general "duty to maintain, repair, service, troubleshoot and generally keep the water pipelines in good and working order." Defendant, in its motion for summary judgment, properly observed that the Mosakowskis had failed to present expert testimony regarding defendant's applicable standard of care or breach of that duty. In their response to defendant's motion for summary judgment, the Mosakowskis should have

> (1) point[ed] to evidence establishing material factual disputes that were over-looked or ignored by the moving party; (2) rehabilitat[ed] the evidence attacked by the moving party; (3) produc[ed] additional evidence establishing the existence of a genuine issue for trial; or (4) submit[ed] an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06.

*Martin*, 271 S.W.3d at 84.

---

[11] "In so concluding, we need not foreclose the possibility of a future case in which the breakage rate of a pipeline is so extensive and frequent, and so resistant to repair, that a res-ipsa-loquitur-style inference could be made—one suggesting that the standard of care would necessarily call for replacement, even without expert testimony. But this is not such a case." *Jenkins*, 321 P.3d at 1053 n.7.

- 17 -

The Mosakowskis attempted to produce additional evidence establishing the existence of a genuine issue for trial by attaching two reports from defendant's water loss control company purporting to show that defendant was on notice of leaks in its water system. Defendant argues that one of these reports is irrelevant because it was published after the alleged water pipeline break in 2014. Defendant argues that the other report is inadmissible hearsay and therefore should not be considered at the summary judgment stage. *See **Green v. Green***, 293 S.W.3d 493, 513 (Tenn. 2009). We do not reach the questions raised by defendant because even if the reports were admissible in evidence, they do not, standing alone, explain the precise scope of defendant's legal duty of care, nor do they specifically explain what defendant did or failed to do to satisfy its legal duty. *See **Jenkins***, 321 P.3d at 1050 (holding that plaintiff failed to identify sufficient evidence of defendant's legal duty and breach, despite the fact that an "annual assessment" had identified the faulty water pipeline "as a candidate for replacement").

The Mosakowskis also had the option of submitting an affidavit explaining the necessity of further discovery. ***Martin***, 271 S.W.3d at 84. Yet, the record contains no evidence that the Mosakowskis requested an extension of time to identify a potential expert witness.

In light of the foregoing analysis, we hold that summary judgment on the negligence claim was appropriate because the Mosakowskis' evidence at the summary judgment stage was insufficient to establish defendant's applicable duty of care and breach of that duty. Accordingly, the trial court's dismissal of the Mosakowskis' negligence claim pursuant to Tenn. R. Civ. P. 12.02(6) was harmless error.

## V.

Next, we turn to the issue of whether the trial court erred in granting defendant's motion for summary judgment with respect to the Mosakowskis' breach of contract claim. We articulated the rules and burden-shifting framework applicable to motions for summary judgment in Part IV of this opinion. Because those rules also apply here, we proceed with our de novo review of the trial court's decision.

In order to make a prima facie case for a breach of contract claim, a plaintiff must allege: "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." ***C & W Asset Acquisition, LLC v. Oggs***, 230 S.W.3d 671, 676-77 (Tenn. Ct. App. 2007) (quoting ***ARC LifeMed, Inc., v. AMC–Tennessee, Inc.***, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)).

Defendant argues that it carried its burden of production by affirmatively negating the first essential element of the Mosakowskis' breach of contract claim. Specifically, defendant argues that even if one of its representatives told the Mosakowskis that

defendant would pay for all repairs, such a promise was not supported by consideration, which is a prerequisite for the existence of an enforceable contract. *See Campbell v. Matlock*, 749 S.W.2d 748, 751 (Tenn. Ct. App. 1987).

In their response to defendant's motion for summary judgment, the Mosakowskis asserted that their breach of contract claim

> is not only based on the assurance from [defendant] that they would pay for damages to the Mosakowskis' property, but also on the fact that the Plaintiffs entered into a contractual agreement with [defendant] when they purchased their lot, which obligates the Plaintiffs to pay assessments and obligates [defendant] to maintain the waterlines and sewer lines within the community, and also to promote the health, safety and welfare of the residents[.]

For the first time, the Mosakowskis attached defendant's articles of incorporation and bylaws as an exhibit. They also attached their deed to the property as well as a two-page excerpt from a deposition in which Jeff Gaglee, a representative of defendant, made statements about defendant's articles of incorporation and bylaws.

The trial court granted defendant's motion for summary judgment. The court determined that there was no enforceable contract between the parties because there was no consideration for the oral promise made by defendant's representatives to the Mosakowskis. The court declined to consider defendant's articles of incorporation and bylaws as evidence of a breach of contract for the following reasons:

> Tennessee is a notice pleading state; however, even under that liberal pleading standard it would be impossible for the Court to conclude that the Defendant – or anybody else, for that matter – was or had any notice of an alleged breach of contract claim related to the articles of incorporation.

We will first address whether the trial court erred in refusing to consider the defendant's articles of incorporation and bylaws as evidence of a breach of contract. As an initial matter, the trial court correctly observed that Tennessee is a notice pleading state. "[T]echnical forms in pleadings are not now required[.]" *Randolph v. Meduri*, 416 S.W.3d 378, 384 (Tenn. Ct. App. 2011) (quoting *Am. Lead Pencil Co. v. Nashville, C. & St. L. Ry.*, 134 S.W. 613, 615 (Tenn. 1911)). Nevertheless, "Tennessee courts have long adhered to the principle that a party's proof must correspond with the allegations set forth in the pleadings." *Id.* (citations omitted).

The policy underpinning this rule is that "since the purpose of

- 19 -

pleadings is to give notice to all concerned regarding what may be adjudicated, a judgment beyond the scope of the pleadings is beyond the notice given the parties and thus should not be enforced."

*Id.* (quoting ***Brown v. Brown***, 281 S.W.2d 492, 497 (Tenn. 1955)).

Accordingly, we have held that "a trial court may exclude proof of an issue not fairly within the scope of the pleadings upon the objection of the adverse party." *Id.* at 385 (citations omitted). In making that determination, the court "should only exclude proof that materially varies from the pleadings because only a material variance defeats a party's right to recover." *Id.* (citing ***McCray v. Hughes***, 385 S.W.2d 124, 126 (Tenn. Ct. App. 1964)). We have explained that "[a] variance between the pleadings and the proof is material only where an adverse party is misled to his or her prejudice." *Id.* (citations omitted). Application of the rule in this manner serves the purpose of preventing unfair surprise. *Id.*

Here, neither Mr. Tolliver's Amended Complaint nor the Mosakowskis' amendment directly mentions a written contract or the defendant's articles of incorporation and bylaws. Although the pleadings assert a "breach of contract" claim, the only factual allegations that support such a claim are the alleged conversations between defendant's representatives and the Mosakowskis. After reviewing the record, it is clear that the first time the defendant's articles of incorporation were directly mentioned was in the Mosakowskis' response to the defendant's motion for summary judgment.

In our view, the Mosakowskis' proof of the defendant's articles of incorporation and bylaws materially varies from the allegations made in their pleading. This case was commenced on December 9, 2015 when Mr. Tolliver filed his original complaint. There was no indication that any of the plaintiffs were alleging breach of a written contract until almost two years later when the Mosakowskis filed their response to defendant's motion for summary judgment. This came after the close of discovery and approximately one month before trial. Such short notice of an entirely new theory of recovery would certainly prejudice defendant.

In ***Town of Franklin v. Hermitage Engineering Company***, this Court noted that "where one brings a suit on a written contract he cannot recover on proof of a verbal contract, or where one sues on an express contract he cannot recover on an implied contract, on account of variance in the pleading and proof." 1930 WL 1717, at *5 (Tenn. Ct. App., filed Jun 11, 1930), *perm. app. denied* (Tenn. 1931). The proper method of introducing a new theory of recovery arising from the same cause of action is to amend one's complaint. *See id.* at *5-6; ***Blackburn & McCune, PLLC v. Pre-Paid Legal Services, Inc.***, 398 S.W.3d 630, 661 (Tenn. Ct. App. 2010) ("[A] plaintiff may not raise a

new theory of recovery for the first time in response to the defendants' motion for summary judgment. Rather, the proper procedure would have been to seek to the amend the complaint . . . .").

In a last ditch effort to save their new theory of recovery, the Mosakowskis observe that paragraph three of their amendment includes language nearly identical to the defendant's articles of incorporation. We are not persuaded that such an indirect and tangential reference to the articles of incorporation was sufficient to put defendant on notice that the Mosakowskis were alleging breach of a written contract. Moreover, Tenn. R. Civ. P. 10.03 provides:

> Whenever a claim or defense is founded upon a written instrument other than a policy of insurance, a copy of such instrument or the pertinent parts thereof shall be attached to the pleading as an exhibit unless the instrument is (1) a matter of public record in the county in which the action is commenced and its location in the record is set forth in the pleading; (2) in the possession of the adverse party and this fact is stated in the pleading; (3) inaccessible to the pleader or is of such nature that attaching the instrument would be unnecessary or impracticable and this fact is stated in the pleading, together with the reason therefor. Every exhibit so attached or referred to under (1) and (2) shall be a part of the pleading for all purposes.

Tenn. R. Civ. P. 10.03. Thus, when a plaintiff seeks to recover on a theory that the defendant breached a written contract, the rules of civil procedure require a heightened pleading standard; the plaintiff must *attach* the written instrument unless certain exceptions apply. Here, the only potentially relevant exception would be (2). This exception, however, does not apply. Although defendant would have certainly been in possession of its own articles of incorporation and bylaws, that fact was not "stated in the pleading." *See id.* For all of the foregoing reasons, we conclude that the trial court did not err in refusing to consider the defendant's articles of incorporation and bylaws as evidence of breach of contract.

We now turn to the alleged oral contract. The Mosakowskis' amendment stated that "[r]epresentatives of [defendant] assured the Mosakowskis that they would pay for damage, but have failed to follow through with that agreement." The Mosakowskis also point to Mr. Tolliver's deposition, in which he stated: "To the best of my knowledge, everybody I talked to said, you know, they're going to fix it; it will be no problem. You know, they'll take care of everything." On appeal, the Mosakowskis insist that the alleged statements by defendant's representatives are evidence of defendant's "pure acceptance of responsibility." The Mosakowskis claim that these statements are

admissible into evidence pursuant to Tenn. R. Evid. 803(1.2) (admissions by party-opponent). According to the Mosakowskis, these alleged statements "raise a genuine issue of material fact as to liability" and "[a] trier [of] fact could determine that the statements constitute admissions by the Defendant."

The Mosakowskis' focus on the rules of evidence is misplaced. Although the admissibility of evidence is a threshold issue at the summary judgment stage, the *ultimate* issue is not whether the statements are admissible or even whether a jury could interpret those statements as defendant's "pure acceptance of responsibility." Rather, the issue is whether defendant's alleged statements, if true, created an enforceable contract supported by consideration.

"[C]onsideration exists when the promisee does something that it is under no legal obligation to do or refrains from doing something which it has a legal right to do." **Brown Oil Co., Inc. v. Johnson**, 689 S.W.2d 149, 151 (Tenn. 1985). The dispositive issue in this case is whether the Mosakowskis refrained from making repairs to their home and delayed pursuing legal action against defendant in exchange for defendant's alleged assurances that it would pay for the repairs. *See* **Palmer v. Dehn**, 198 S.W.2d 827, 828 (Tenn. Ct. App. 1946) ("An agreement to forbear, for a time, proceedings at law or in equity, to enforce a well-founded claim, is a valid consideration for a promise.").

Defendant submitted an affidavit from its finance director which vigorously denied that any of defendant's representatives had ever asked the Mosakowskis to refrain from making necessary repairs or from pursuing legal action against defendant. The finance director also claimed that the Mosakowskis never promised to refrain from making repairs or from pursuing legal action. Based on this evidence, the trial court concluded that the Mosakowskis never agreed to give up anything in exchange for defendant's alleged promises.

In our view, the trial court erred in making that determination at the summary judgment stage. We have held that "[w]here the proof is undisputed *and where no conflicting inferences may be drawn*, the question of whether an act or forbearance constitutes consideration for a contract is a question of law." **Cochran v. Robinhood Lane Baptist Church**, No. W2004-01866-COA-R3-CV, 2005 WL 3527627, at *2 (Tenn. Ct. App., filed Dec. 27, 2005) (quoting **Bratton v. Bratton**, 136 S.W.3d 595, 601 (Tenn. 2004)). Here, however, a jury could draw conflicting inferences about whether the parties' conversations and subsequent conduct constituted an agreement that the Mosakowskis would refrain from making further repairs or pursuing legal action against defendant.

In **Palmer v. Dehn**, a mechanic was injured and lost two fingers while servicing a vehicle. 198 S.W.2d 827, 828 (Tenn. Ct. App. 1946). On the way to the hospital, the defendant allegedly exclaimed: "I am awful sorry this happened, but don't worry a

minute. I will see you are compensated for the loss of your finger, take care of your expenses for the loss of your finger, and all." **Id.** at 599. The defendant later argued that there was no consideration for this alleged oral contract. **Id.** This Court held otherwise:

> In the instant case the jury was justified in inferring that the promisee accepted this promise if it were performed within a reasonable time; that in foregoing his right of action for a reasonable time was a good consideration moving to the promisor; they were clearly justified in inferring that the basis of the promise of the promisor was for forbearance in bringing suit. By forbearing he might have readily born a detriment. The promisor might easily have gained a benefit by such a forbearance.

Thus, the Court held that a jury could *infer* that the plaintiff agreed to refrain from bringing suit, even though the plaintiff never explicitly stated that he would do so. *See id.*; *see also* **Davis Longsworth Elec., Inc. v. Morris**, No. 692, 1987 WL 18063, at \*2 (Tenn. Ct. App., filed Oct. 9, 1987) ("[A]n agreement to forbear may be implied from conduct of the parties. '[A]ctual forbearance may be evidence from which . . . an agreement to forbear may be implied.' ") (citation omitted), *perm. app. denied* (Tenn. 1987); **FDIC v. Crabtree**, No. 86-14-II, 1986 WL 5323, at \*3 (Tenn. Ct. App., filed May 7, 1986) ("Courts sometimes find consideration by implying a promise from the act of forbearance."). This Court's decision in **Palmer** has been cited and relied upon in numerous other cases. *See, e.g.*, **De Bord v. Brown**, 217 S.W.2d 772, 774 (Tenn. 1948) (finding sufficient evidence of forbearance when the at-fault driver promised another driver that "her car would be taken care of"); **FDIC**, 1986 WL 5323, at \*3 (finding that summary judgment was inappropriate because a fact-finder should determine whether forbearance served as consideration for defendant's guaranty).

Accordingly, we conclude that the trial court erred in dismissing the breach of contract claim on summary judgment. There is a genuine issue of material fact as to whether the conversations and conduct of the parties implies an agreement that the Mosakowskis would refrain from making repairs or from taking legal action against defendant in exchange for defendant's assurances that it would pay for all repairs.[12]

---

[12] We note that if an oral contract was, in fact, formed, the statute of frauds would not bar its enforcement because it was possible for defendant to complete performance within one year. *See* Tenn. Code Ann. § 29-2-101(a)(5) (2012); **Boutwell v. Lewis Bros. Lumber Co.**, 182 S.W.2d 1, 2 (Tenn. Ct. App. 1944) ("The mere fact that the contract might continue for more than a year does not bring it within the statute . . . . Nor is improbability of performance sufficient if the contract is susceptible of being performed within the year[.]" (citations omitted)).

## VI.

The judgment of the trial court is affirmed in part and reversed in part. Costs on appeal are taxed fifty percent (50%) to the appellants Mosakowski and fifty percent (50%) to the appellee, Tellico Village Property Owners Association, Inc. The case is remanded, pursuant to applicable law, for further proceedings consistent with this opinion.

_____
CHARLES D. SUSANO, JR., JUDGE