IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 18, 2025 Session

## A.M. BY AMANDA M. ET AL. v. CAROL MASEK ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT-005202-16  Yolanda Kight Brown, Judge**

_____

### No. W2024-01412-COA-R3-CV
_____

The family of a child bitten by a dog appeal the dismissal of their lawsuit at the summary judgment stage. The trial court ruled that the plaintiffs failed to present evidence that the defendant owners knew or should have known of the dog's dangerous propensities as required by Tennessee Code Annotated section 44-8-413(c)(1). The plaintiffs argue that (1) the trial court committed reversible error when it granted the defendants' motion for summary judgment without a hearing; and (2) they presented sufficient evidence to create a dispute of genuine material fact as to whether the defendant owners should have known of the dog's dangerous propensities. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which KENNY ARMSTRONG and KRISTI M. DAVIS, JJ., joined.

Matthew Porter and John B. Bartels, Memphis, Tennessee, for the appellants, A.M., a minor child, Adam M. and Amanda M.

Andrew H. Owens, Memphis, Tennessee, for the appellees, Carol Masek, Kyle Lowery, and Samantha Lowery.

## OPINION

### I.  FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case are largely undisputed for purposes of this appeal. At all times relevant, Defendant/Appellee Samantha Lowery and her husband Kyle Lowery (together with Mrs. Lowery, "the Lowerys") were residing in a home rented from its owner, Carol

Masek (together with the Lowerys, "the defendants" or "Appellees"). Ms. Masek did not reside on the property in question.

On December 26, 2015, the Lowerys invited Plaintiffs/Appellants Amanda and Adam M., and their minor son, Aiden (collectively, "Appellants") over to celebrate Christmas. At the end of the evening, Aiden stayed the night in the Lowerys' home, while his parents did not.

The next morning, Mrs. Lowery allowed Aiden to play in the backyard with her dogs. Mrs. Lowery intended to join Aiden and the dogs outside in a moment. Mrs. Lowery had never before allowed Aiden to be alone with the dogs. Before Mrs. Lowery could join Aiden outside, within a span of approximately three minutes, one of the dogs, Benelli, attacked Aiden.

On December 28, 2016, Appellants filed a complaint for damages against Appellees in the Shelby County Circuit Court ("the trial court"). The complaint alleged that Aiden suffered severe physical and emotional injuries, including a brain injury and permanent scarring, as a result of Appellees' negligence in failing to control the dog, to warn Appellants of the dog's violent tendencies, and to supervise the dog's interactions with Aiden. The complaint further alleged that the dog had attacked a cat one to two weeks prior to the incident and therefore that Appellees had knowledge of the dog's violent propensities. Both Mrs. Lowery and Ms. Masek answered the complaint, denying that a cat had been attacked by the dog at issue or that they had knowledge of any dangerous propensities in the dog.[1]

On November 27, 2023, Appellees jointly filed a motion for summary judgment arguing that they were not liable under Tennessee Code Annotated section 44-8-413, which governs dog bite cases. In particular, Appellees argued that the dog bite occurred on residential property leased by the Lowerys from Ms. Masek and that Appellants could not prove that Appellees had any prior knowledge of the dog's dangerous propensities. Appellees further argued that Ms. Masek had no right to control the dog.

In support of their motion, Appellees filed affidavits from all Appellees, as well as a short statement of undisputed material facts that alleged in relevant part as follows:

2. [Ms.] Masek, the owner of the premises where the alleged incident occurred, was not residing on the property at the time of the incident. She had leased the property under an oral lease to [Mrs.] Lowery and [Mr.] Lowery. Said lease agreement gave the Lowery[s] the right of exclusive enjoyment in possession of the property. [Ms.] Masek did not have the right

---

[1] Mr. Lowery filed no answer. Mrs. Lowery and Ms. Masek, though represented by the same counsel, filed separate answers.

- 2 -

to enter into the property without the Lowery[s'] permission and had no right to direct or control their ownership and control of their dog. [Ms.] Masek had no ownership interest in the dog.

3. At no time prior to the alleged attack had any of the defendants heard about or become aware of any vicious, dangerous or aggressive propensities in the dog in question, towards people or other animals. The defendants had never heard or been aware of the dog growling, snapping or otherwise exhibiting an ill temper towards any other creature. The dog in question always exhibited an affable and friendly demeanor in the defendants['] presence and prior to the date of the incident, defendants were not aware of any behavior to the contrary.

(Citations omitted). A hearing on Appellees' motion for summary judgment was scheduled for July 31, 2024, via ZOOM.

Appellants responded in opposition to Appellees' motion for summary judgment on July 22, 2024. Although Appellants admitted all of Appellees' proposed undisputed material facts, Appellants alleged other undisputed facts that they asserted were also relevant to the summary judgment question as they related to Mrs. Lowery's supervision of Aiden and the dogs. Appellants also argued that there was a genuine dispute of material fact "as to the docility of the dog responsible for the attack" and Appellees' knowledge thereof such that summary judgment was inappropriate.

Appellees responded to Appellants' statement of additional undisputed material facts on July 29, 2024, generally admitting that Mrs. Lowery had never allowed Aiden to be unsupervised around her dogs prior to the day of the incident and that she intended to join Aiden and the dogs outside in a moment. However, Appellees argued that Appellants had presented no proof of an essential element of their case: prior knowledge to put Appellees on notice of the dog's dangerous propensities. Appellees further argued that the claim against Ms. Masek failed because Appellants presented no proof that Ms. Masek had the right to control the dog.

On July 30, 2024, the clerk of the trial court informed the parties that the hearing on the motion for summary judgment would need to be reset "due to the [c]ourt being down." The email stated that the hearing could not be reset until mid-September and that dates would be sent to the parties. On August 8, 2024, Appellants' counsel emailed the trial court clerk for new dates; counsel never received a response.

Instead, on August 13, 2024, the trial court emailed its ruling granting summary judgment in favor of Appellees. Inexplicably, the next day, the trial court's clerk reached out to Appellants' counsel concerning how long the proposed hearing would take. A written order reflecting the grant of summary judgment was entered on August 21, 2024, wherein the trial court concluded that Appellants did not demonstrate an essential element of their

claim under section 44-8-413(c)(1) as to the Lowerys and that Appellants failed to show that Ms. Masek owned or controlled the dog. Appellants thereafter appealed to this Court.

## II. ISSUES PRESENTED

Appellants raise the following issues, which are taken from their brief:

1. Whether the trial court abused its discretion in entering an order granting the motion for summary judgment after Appellants had requested hearing on the motion and it was scheduled to be set for hearing?
2. Whether the trial court committed error in granting the motion for summary judgment?

## III. STANDARD OF REVIEW

We review the trial court's grant of summary judgment de novo, with no presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *Abshure v. Methodist Healthcare-Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010)). As part of our review, we must "take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993) (citations omitted), *holding modified by Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1 (Tenn. 2008), *holding modified by Rye*, 477 S.W.3d 235. We similarly accept the evidence presented by the nonmoving party as true and resolve any doubts about the existence of a genuine issue of material fact in its favor. *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 887 (Tenn. 2019) (citing *Martin v. Norfolk S. Ry.*, 271 S.W.3d 76, 84 (Tenn. 2008)).

A party is entitled to summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. To the extent that this appeal requires that we interpret and apply Tennessee Code Annotated section 44-8-413, the interpretation of statutes and their application to particular facts are questions of law generally amenable to summary judgment. *Metro. Dev. & Hous. Agency v. Trinity Marine Nashville, Inc.*, 40 S.W.3d 73, 76 (Tenn. Ct. App. 2000). The trial court's conclusions as to the interpretation of a statute are likewise not entitled to a presumption of correctness. *Goodman v. City of Savannah*, 148 S.W.3d 88, 91 (Tenn. Ct. App. 2003).

## IV. ANALYSIS

### A.

The first question in this appeal is whether the trial court committed reversible error when it ruled on Appellees' motion for summary judgment without allowing Appellants the hearing that they had undisputedly requested. Summary judgment in Tennessee is governed by Rule 56.04 of the Tennessee Rules of Civil Procedure, which provides, in relevant part, as follows:

> The motion [for summary judgment] shall be served at least thirty (30) days before the time fixed for the hearing. The adverse party may serve and file opposing affidavits not later than five days before the hearing. Subject to the moving party's compliance with Rule 56.03, the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The trial court shall state the legal grounds upon which the court denies or grants the motion, which shall be included in the order reflecting the court's ruling.

Appellants cite no legal authority in their brief that interprets Rule 56.04 as mandating that trial courts are required to hold oral arguments on motions for summary judgment when requested by a party. Indeed, Appellants acknowledge that a local rule in Shelby County specifically grants trial courts the discretion to "hear motions submitted on briefs and not grant oral argument." Shelby County Local Rule 6(b). *But cf.* ***Pettus v. Hurst***, 882 S.W.2d 783, 786 (Tenn. Ct. App. 1993) ("Trial courts may, however, adopt local practice rules as long as the rules do not conflict with other applicable statutes or rules promulgated by the Tennessee Supreme Court."). And Appellees point out that trial courts are generally given wide "discretion to control the disposition of cases on their dockets[.]" ***Kenyon v. Handal***, 122 S.W.3d 743, 751 (Tenn. Ct. App. 2003). At oral argument, Appellants took somewhat inconsistent positions in that they conceded that the trial court's decision was reviewed for an abuse of discretion,[2] but also argued that Rule 56.04 makes a hearing on a summary judgment motion mandatory when requested by the opposing party.[3] In any event, in their brief, Appellants assert that the record on appeal indicates that the lack of oral argument in this particular case was not the product of the trial court's discretionary decision but rather a clerical or communication error that should be corrected on appeal.

Our research likewise reveals no Tennessee cases specifically addressing whether trial courts have discretion to resolve motions for summary judgment without oral argument hearings under the circumstances of this case. On the one hand, Tennessee's

---

[2] An abuse of discretion occurs when a trial court "'causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.'" ***State v. Reynolds***, 635 S.W.3d 893, 921 (Tenn. 2021) (quoting ***Lee Med., Inc. v. Beecher***, 312 S.W.3d 515, 524 (Tenn. 2010)).

[3] Appellants therefore argued that the trial court's failure to do so was an abuse of discretion.

summary judgment procedure has been repeatedly referred to as judgment "on the papers," suggesting that an oral hearing may not be necessary. *See, e.g.*, *Leffew v. Acands, Inc.*, No. 03A01-9508-CV-00280, 1996 WL 141664, at *2 (Tenn. Ct. App. Mar. 29, 1996) (Susano, J., concurring) ("Summary judgment is designed to resolve cases 'on the papers' when it is clear that all of the material facts required to resolve a given issue are undisputed and that those undisputed material facts demonstrate conclusively that the moving party is entitled to a judgment, as a matter of law." (citing Tenn. R. Civ. P. 56.03)); *State ex rel. Cain v. City of Church Hill*, No. E2007-00700-COA-R3-CV, 2008 WL 4415579, at *7 (Tenn. Ct. App. Sept. 30, 2008); *Reed v. Carter Cnty.*, No. E2002-03131-COA-R3-CV, 2003 WL 22794485, at *5 (Tenn. Ct. App. Nov. 25, 2003). Indeed, Rule 56.04 indicates that summary judgment should be made "on the papers"—that is, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits[.]" Tenn. R. Civ. P. 56.04. As a result, this Court has held that parties are not entitled to a summary judgment hearing in which live testimony is presented. *See Chase Manhattan Mortg. Corp. v. St.*, No. W2007-02553-COA-R3-CV, 2010 WL 1462544, at *3 (Tenn. Ct. App. Apr. 14, 2010).

Additionally, federal courts interpreting the federal analogue to Rule 56.04 have uniformly held that oral hearings on motions for summary judgment are not mandated by the federal rules of civil procedure. *See Sama v. Hannigan*, 669 F.3d 585, 590 (5th Cir. 2012) ("District courts are not required to hold an oral hearing on a summary judgment motion."); *Smith v. School Bd. of Orange Cnty.*, 487 F.3d 1361, 1367 (11th Cir. 2007) ("It is well settled in this circuit that [Federal Rule of Civil Procedure] 56(c) does not require an oral hearing." (quoting *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir. 1984))). Tennessee courts often look to federal precedents involving rules of civil procedure similar to our own. *See Webb v. Nashville Area Habitat for Human., Inc.*, 346 S.W.3d 422, 430 (Tenn. 2011) ("Although federal judicial decisions 'interpreting rules similar to our own are persuasive authority for purposes of construing the Tennessee rule,' they 'are non-binding even when the state and federal rules are identical.'" (quoting *Harris v. Chern*, 33 S.W.3d 741, 745 n. 2 (Tenn. 2000))).

On the other hand, it cannot be ignored that Rule 56.04 clearly speaks of a "hearing" taking place, as the deadline for the opposing party's response is conditioned upon the time set "for the hearing."[4] Tenn. R. Civ. P. 56.04. As a result, the federal precedent, based on a rule that does not mention a "hearing" of any kind, can offer little guidance to our interpretation of Rule 56.04. *See generally* Fed. R. Civ. P. 56. And the term "hearing" is typically understood to mean "[a] judicial session, usu[ally] open to the public, held for purposes of deciding issues of fact or of law, sometimes with witnesses testifying." *Hearing*, *Black's Law Dictionary* (9th ed. 2009).

---

[4] This Court therefore questioned at oral argument whether a motion for summary judgment could ever be ripe for disposition until a hearing was set, unless the parties waived hearing on the motion. As discussed *infra*, we do not resolve this issue in this appeal.

Still, the Tennessee Supreme Court has countenanced grants of summary judgment even when not requested by a party, but only in "rare cases":

> Summary judgment may be granted in favor of a nonmovant. ***Thomas v. Transp. Ins. Co.***, 532 S.W.2d 263, 266 (Tenn. 1976). Such action should be taken only in rare cases and with meticulous care. ***Id.*** Further, the party against whom summary judgment is to be rendered must have had notice and a reasonable opportunity to respond to all the issues to be considered. *See **id.***; ***March Group, Inc. v. Bellar***, 908 S.W.2d 956, 959 (Tenn. Ct. App. 1995).

***Griffis v. Davidson Cnty. Metro. Gov't***, 164 S.W.3d 267, 284 (Tenn. 2005). Thus, notice and the "opportunity to respond" are minimum requirements in the context of summary judgment. The question remains whether the "opportunity to respond" indicates that the parties are entitled to an oral hearing, particularly when requested by the opposing party.

In our view, however, we need not resolve this issue of first impression. Instead, even if we were to assume *arguendo* that it was error for the trial court to grant Appellees' motion for summary judgement without holding a hearing in which Appellants were permitted to present oral argument, we conclude that the trial court's failure to allow oral argument in this case is harmless error. *Cf.* ***Housewright v. McCormack***, No. E2016-00272-COA-R3-CV, 2016 WL 6958725, (Tenn. Ct. App. Nov. 29, 2016) (ruling that a failure to hold a second hearing after a renewed motion for summary judgment was filed was harmless error without specifically ruling on whether a hearing was required) (discussed in detail, *infra*).

Even when a technical error is made in the trial court, it does not necessarily follow that reversal is the proper remedy. Instead in some instances an "error is deemed harmless and does not amount to reversible error." ***Coffey v. Noll***, No. 01A01-9712-CV-00709, 1999 WL 20778, at *6 (Tenn. Ct. App. Jan. 20, 1999). Specifically, Rule 36(b) of the Tennessee Rules of Appellate Procedure provides that "[a] final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." "[T]he harmless error doctrine promotes public respect for the judicial system by focusing on the underlying fairness of the proceeding rather than on the virtually inevitable presence of immaterial error." ***Smith v. Smith***, No. W2013-02095-COA-R3-CV, 2015 WL 3971836, at *4 n.4 (Tenn. Ct. App. June 30, 2015) (internal quotation marks omitted) (quoting ***Momon v. State***, 18 S.W.3d 152, 165 (Tenn. 1999)). We must therefore determine first whether the harmless error doctrine is applicable in this situation, and if so, whether the purported error committed by the trial court was harmless under the circumstances.

Courts outside this state have not uniformly applied the harmless error doctrine to similar situations. On one side, the Court of Civil Appeals of Alabama has held that when

a court rules on a motion without the mandatory hearing, harmless error may nevertheless be applicable to protect the trial court's judgment:

> Although Rule 59(g), Ala. R. Civ. P., provides that postjudgment motions "shall not be ruled upon until the parties have had opportunity to be heard thereon," our Supreme Court has stated that "the denial of a postjudgment motion without a hearing thereon is harmless error, where (1) there is either no probable merit in the grounds asserted in the motion, or (2) the appellate court resolves the issues presented therein, as a matter of law, adversely to the movant, by application of the same objective standard of review as that applied in the trial court." ***Historic Blakely Auth. v. Williams***, 675 So.2d 350, 352 (Ala. 1995).

***Hollander v. Nance***, 888 So. 2d 1275, 1279 (Ala. Civ. App. 2004); *see also* ***C/S Sols., Inc. v. Energy Maint. Servs. Grp. LLC***, 274 S.W.3d 299, 308 (Tex. App. 2008) ("The county court could have simply ruled without a hearing. It is harmless error at worst for the trial court to rule on the submitted motion for partial summary judgment at a postsubmission hearing at which [the opposing party's] lawyer was present, nothing new was filed or argued, and no substantive argument is made on appeal regarding harm.").

In contrast, the Georgia Court of Appeals has held that it is not harmless error for a court to refuse to conduct oral argument on a motion for summary judgment when requested under that state's rules:

> To hold that a failure to conduct the timely requested hearing can nevertheless constitute mere harmless error would not encourage adherence to the Uniform Rules and would render the mandated hearing a hollow right. Having timely requested a hearing a litigant should not have summary judgment granted against him without having had the opportunity to convince the trial court to the contrary and a trial court should not grant summary judgment against him without having availed itself of the opportunity to interrogate counsel. Appellate review of the record is no viable substitute for the opportunity to argue before the trial court.

***Dixon v. McClain***, 204 Ga. App. 531, 531, 420 S.E.2d 66, 66–67 (1992) (involving a rule stating that oral argument "shall be permitted upon request" (quoting Ga. Unif. Super. Ct. R. 6.3)); *see also* ***Otte v. Tessman***, 426 N.E.2d 660, 661 (Ind. 1981) ("(P)rejudice is presumed on appeal where a trial court fails to follow the mandate of Trial Rule 56 which provides that the trial court fix a time for a hearing on the motion for summary judgment before ruling upon the motion." (quoting ***Otte v. Tessman***, 412 N.E.2d 1223, 1231 (Ind. Ct. App. 1980), *vacated,* 426 N.E.2d 660 (Ind. 1981) (Staton, J., dissenting))).

Although we have not been faced with the exact question at issue in this appeal, Tennessee courts have repeatedly applied the harmless error doctrine to errors in compliance with Rule 56.04's timing requirements. For example, in *Craven v. Lawson*, 534 S.W.2d 653 (Tenn. 1976), the appellant argued that the trial court erred in ruling on the defendant's motion for summary judgment the same day it was filed. *Id.* at 655. The Tennessee Supreme Court first held that the timing requirements in Rule 56 were intended "to allow the opposing party time to file discovery depositions, affidavits, etc., as well as to provide full opportunity to amend." *Id.* Because "in prescribing the thirty (30) day period[,] the rule uses the word 'shall'[,]" our supreme court held that the timing requirements were "mandatory and not discretionary." *Id.* But the court held that the trial court's failure to follow this mandate was nevertheless subject to the harmless error doctrine:

> In this case the facts as pleaded, bearing on the issue made on defendant's summary judgment motion are undisputed and the question presented is one of law only. In the interest of the orderly and expeditious disposition of litigation and to serve the manifest interest of the parties in this case we must finally decide that legal issue on this appeal, the effect of which is to render harmless the error of the trial judge. However, it should be apparent that where there is the slightest possibility that the party opposing the motion for summary judgment has been denied the opportunity to file affidavits, take discovery depositions or amend, by the disposition of a motion for summary judgment without a thirty (30) day interval following the filing of the motion, it will be necessary to remand the case to cure such error.

*Id.*; *see also Tchrs. Ins. & Annuity Ass'n v. Harris*, 709 S.W.2d 592, 595 (Tenn. Ct. App. 1985) ("There is no showing in the record that the appellant was prejudiced by the hearing on the motion within seven days after it was filed."). More recently, this Court has held that in order to determine whether a trial court's decision to prematurely grant a motion for summary judgment is a harmless error,

> we look to whether the trial court's premature consideration of the motion prevented the nonmovant from engaging in needed discovery, whether the nonmovant raised the timeliness issue or sought a continuance of the hearing, and whether the trial court's failure to wait thirty days prejudiced the nonmovant's defense to the motion.

*Ice Stores, Inc. v. Holmes*, No. W2007-01552-COA-R3-CV, 2008 WL 4981077, at *4 (Tenn. Ct. App. Nov. 25, 2008); *see also Tolliver v. Tellico Vill. Prop. Owners Ass'n, Inc.*, 579 S.W.3d 8, 20 (Tenn. Ct. App. 2019) (holding that premature grant of a motion to dismiss is harmless error when "(1) there was a pending motion for summary judgment,

(2) the non-moving party had a full and fair opportunity to respond, and (3) summary judgment is appropriate as a matter of law.").

This Court has also applied harmless error in a situation quite similar, though not identical, to this one. In ***Housewright v. McCormack***, the defendants filed a motion for summary judgment concerning the validity of a deed. 2016 WL 6958725, at *1. The plaintiffs responded that the motion for summary judgment was deficient in that it was not accompanied by a statement of undisputed material facts, and that the defendants were not entitled to judgment based on the undisputed facts that the plaintiffs submitted. *Id.* at *2. The trial court held a hearing on the motion for summary judgment and ruled that the defendants would be permitted to file a statement of undisputed fact and the plaintiffs would be permitted to depose a witness. The defendants indeed filed a statement of undisputed material facts, to which the plaintiffs responded. The defendants thereafter filed a renewed motion for summary judgment with a new statement of undisputed facts and new affidavits. *Id.* The trial court eventually granted the defendants' motion for summary judgment without holding a second hearing and the plaintiffs appealed to this Court. *Id.* at *3.

On appeal, the plaintiffs asserted, inter alia, that the trial court erred in failing to hold a hearing following the filing of the second motion for summary judgment. *Id.* at *4. The Court of Appeals noted, however, that plaintiffs "responded to the statement of material facts, presented their own affidavits, and even provided the deposition testimony of [the deposed witness] in support of their response." *Id.* Thus, the record clearly indicated that the plaintiffs "were afforded an opportunity to argue their case and present evidence in support of their position." *Id.* And because "[o]ur harmless error rule considers whether the error 'more probably than not affected the judgment' or 'the substantial rights of the party[,]'" we held that "any potential error in failing to hold a new hearing after the filing of the second motion was harmless." *Id.* (quoting Tenn. R. App. P. 36(b)).

Thus, Tennessee courts have previously applied the harmless error doctrine even when the trial court violates mandatory requirements under Rule 56.04. Here, while Rule 56.04 contemplates that motions for summary judgment are subject to hearings, it does not go so far as to include a clear and explicit mandate that the trial court always permit oral argument on a motion for summary judgment when expected by the parties. Based on the precedent outlined above, however, we conclude that to the extent that Appellants contend that the trial court erred in failing to hold a hearing prior to the grant of Appellees' motion for summary judgment, this purported error is subject to a harmless error analysis.

We therefore proceed to consider whether the trial court's purported error in ruling on Appellees' motion without oral argument was in fact harmless. Appellants do address the question of harm in their brief, asserting that "the error was not harmless due to the complexities of the argument to be presented, and the limited guidance offered by Tennessee case law, in applying the relevant statute to the facts in this case."

- 10 -

Respectfully, we cannot agree. For one, as Appellants readily admit, the statute at issue has been considered by this Court on at least eight occasions. *See Munoz v. Sepulveda*, No. M2024-01002-COA-R3-CV, 2025 WL 2603041, at \*6 (Tenn. Ct. App. Sept. 9, 2025) (involving subsection (c)(1)) (discuss in detail, *infra*); *Hudson v. Gravette*, No. M2022-01787-COA-R3-CV, 2025 WL 1342917, at \*1 (Tenn. Ct. App. May 8, 2025) (involving whether a daycare and grooming service was a statutory owner); *Needham v. Gerwig*, No. E2023-00394-COA-R3-CV, 2024 WL 227810, at \*1 (Tenn. Ct. App. Jan. 22, 2024) (addressing the applicability of the statute, but resolving the appeal on a different basis); *Cruise v. Byrd*, No. M2022-01578-COA-R3-CV, 2023 WL 4630165, at \*1 (Tenn. Ct. App. July 20, 2023) (involving whether the property where the incident occurred was residential), *perm. app. denied* (Tenn. Dec. 19, 2023); *Folad v. Quillco, LLC*, 629 S.W.3d 134 (Tenn. Ct. App. 2021) (involving whether store harbored, owned, or controlled dogs); *Greenlee v. Sevier Cnty.*, No. E2017-00942-COA-R3-CV, 2018 WL 1969330 (Tenn. Ct. App. Apr. 26, 2018) (involving a different subsection of the Dog Bite Statute); *Searcy v. Axley*, No. W2017-00374-COA-R3-CV, 2017 WL 4743111 (Tenn. Ct. App. Oct. 19, 2017) (involving subsection (c)(1)); *Moore v. Gaut*, No. E2015-00340-COA-R3-CV, 2015 WL 9584389 (Tenn. Ct. App. Dec. 30, 2015) (involving subsection (c)(1)); *see also Cramer v. Oak Haven Resort, Inc.*, No. 3:16-cv-491-HBG, 2018 WL 4186392, at \*12 (E.D. Tenn. Aug. 31, 2018) (involving whether the property where the incident occurred was residential).[5] And the issue in this case—concerning the evidence of the dog's dangerous propensities—is the central focus of three of these cases. Appellants do not argue that the statute itself is ambiguous or unclear. Certainly, more caselaw is always helpful to our understanding of an issue. But Appellants have failed to explain how their appeal cannot be resolved on the arguments and caselaw available or how holding oral argument in the trial court would have added to our understanding in a manner that was not available otherwise.

Moreover, as previously discussed, interpretation and application of a statute is an issue of law; we therefore apply no presumption of correctness to the trial court's ruling. *See Metro. Dev. & Hous.*, 40 S.W.3d at 76; *Goodman*, 148 S.W.3d at 91. And with all due respect, the issues in this case are not particularly complex; the parties simply disagree as to whether evidence was presented to meet the requirements of one discrete subsection of the statute. Appellants were able to fully and fairly respond to Appellees' motion for summary judgment with their own statement of undisputed material facts, affidavits, and arguments. And Appellants have not pointed to any specific evidence they were unable to procure or any arguments they were unable to make either in the trial court or on appeal as a result of the lack of oral argument. As such, we must conclude that the trial court's purported error was harmless and does not constitute a reversible error.

---

[5] The two most recent opinions were issued after briefing was completed in this appeal. Appellants cited an additional case that is designated as a Memorandum Opinion and therefore may not be cited. *See* Tenn. R. Ct. App. 10.

**B.**

We next consider whether the trial court erred in granting summary judgment to the Lowerys under Tennessee Code Annotated section 44-8-413.[6] The statute, colloquially known as the "Dog Bite Statute" was enacted to govern cases involving injuries caused by dogs. The statute provides, in relevant part, as follows:

(a)(1) The owner of a dog has a duty to keep that dog under reasonable control at all times, and to keep that dog from running at large. A person who breaches that duty is subject to civil liability for any damages suffered by a person who is injured by the dog while in a public place or lawfully in or on the private property of another.
(2) The owner may be held liable regardless of whether the dog has shown any dangerous propensities or whether the dog's owner knew or should have known of the dog's dangerous propensities.
      ….
(c)(1) If a dog causes damage to a person while the person is on residential, farm or other noncommercial property, and the dog's owner is the owner of the property, or is on the property by permission of the owner or as a lawful tenant or lessee, in any civil action based upon such damages brought against the owner of the dog, **the claimant shall be required to establish that the dog's owner knew or should have known of the dog's dangerous propensities.**
(2) The element of proof required by subdivision (c)(1) shall be in addition to any other elements the claimant may be required to prove in order to establish a claim under the prevailing Tennessee law of premises liability or comparative fault.

Tenn. Code Ann. § 44-8-413 (emphasis added). Thus, the statute makes a "distinction between (1) injuries caused by dogs that are 'running at large' . . . and (2) dogs that cause injury while on their owner's property." ***Moore***, 2015 WL 9584389, at *5 (discussing the legal history of dog bite law in Tennessee leading to the enactment of section 44-8-413 in 2007). When the latter situation is at issue, the residential exception applies and "the statute clearly retains and codifies the common law requirement that a claimant 'establish that the dog's owner knew or should have known of the dog's dangerous propensities.'" ***Id.*** (quoting Tenn. Code Ann. § 44-8-413(c)(1)).

Here there is no dispute that the dog bite occurred on residential property that the Lowerys, the dog's owners, lawfully leased from Ms. Masek. As such, section 44-8-413(c)(1) required that Appellants present proof that the Lowerys "knew or should have known of the dog's dangerous propensities."

_____

[6] Appellants concede in their brief that summary judgment was correctly granted to Ms. Masek.

In their motion for summary judgment, Appellees argued that Appellants could not establish this element of their claim, pointing to their own affidavits that they had no knowledge of any dangerous propensities in the dog. The trial court therefore ruled that the burden shifted to the Lowerys to put forth evidence to meet this element of their claim. But the trial court ruled that the Lowerys did not meet this burden. In particular, the trial court noted that Appellants relied on the fact that Mrs. Lowery had never before allowed Aiden to be unsupervised with the dog, indicated that she would be joining Aiden and the dogs in the yard momentarily, and later stated that she failed to supervise Aiden properly. The trial court concluded, however, that these facts raised no more than metaphysical doubt as to Mrs. Lowery's knowledge of any purported dangerous propensities in the dog.

On appeal, Appellants argue that the proper focus is not on what the Lowerys actually knew, but on what they "should have known" about the dog's propensities. Tenn. Code Ann. § 44-8-413(c)(1). And they point to four pieces of evidence that they assert indicate that the Lowerys should have known of Benelli's propensities: (1) that one of the Lowerys' cats was found dead in the weeks leading up to the attack; (2) that the dog was a rescue animal that had only been in the home for a period of eight months; (3) that the dog was kept fenced; and (4) that Mrs. Lowery acknowledged that she never allowed Aiden to be unaccompanied in the backyard with the dog prior to the incident.[7] We will consider each of these facts in turn.

Beginning with the argument surrounding the death of the Lowerys' cat, we note that while Appellants filed their own statement of additional undisputed material facts, none of these alleged facts mention the death of a cat. Moreover, the page of the technical record cited for this evidence contains no mention of a cat. "Judges are not like pigs, hunting for truffles that may be buried in the record," and is not our duty to comb through the record to find the facts to support a parties' argument *Cartwright v. Jackson Cap. Partners, Ltd. P'ship*, 478 S.W.3d 596, 616 (Tenn. Ct. App. 2015) (quoting *Flowers v. Bd. of Pro. Resp.*, 314 S.W.3d 882, 899 n.35 (Tenn. 2010)); *see also* Tenn. Ct. App. R. 6(b) ("No assertion of fact will be considered on appeal unless the argument contains a reference to the page or pages where evidence of such fact is recorded.").

We do note that in a portion of Mrs. Lowery's deposition testimony that was filed in connection with a motion to compel filed well in advance of any motion for summary judgment, Mrs. Lowery does appear to have been asked about the death of cat, responding:

A. I know where you're going with this. There was an incident where I found one of my cats outside my back door just dead. Hard as a rock. There was no

---

[7] Appellants also make much of the fact that Mrs. Lowery testified in her deposition that she believed that she breached a duty to supervise Aiden. While duty and breach of duty are essential elements in all negligence cases, *Cook v. Fuqua*, 653 S.W.3d 702, 706 (Tenn. Ct. App. 2022), the only element at issue in this appeal is the additional element supplied by the dog bite statute. *See* Tenn. Code Ann. § 44-8-413(c)(2). As such, this admission is immaterial to the question presented.

blood, no dismemberment, nothing involved. I mean, to my knowledge, the cat was not attacked.

Thus, the only evidence presented in this case concerning the death of the cat was that it did not appear to have been attacked. Respectfully, evidence that a cat died prior to the incident without any evidence indicating the cause of death or tying the cat's death to the dog at issue is insufficient to create a genuine dispute of material fact.

Respectfully, the fact that the dog had only been owned by the Lowerys for eight months is also not evidence of anything. Specifically, Appellants point to no evidence or authority to suggest that the Lowerys either should or should not have known of a dog's propensities due to an ownership period of eight months. While a longer period of ownership may buttress an owner's claim to a lack of knowledge, we cannot conclude that an eight-month period of ownership or that fact that the dog was rescued suggests anything concerning a dog's propensity toward aggression.

We also reject Appellants' assertion that the Lowerys' choice to keep the dog in a fenced backyard in some way indicates that they were on notice of the dog's purported dangerous propensities. In Tennessee, multiple laws prohibit dogs at large. *See* Tenn. Code Ann. § 44-8-408(b) ("The owner of a dog commits an offense if that dog goes uncontrolled by the owner upon the premises of another without the consent of the owner of the premises or other person authorized to give consent, or goes uncontrolled by the owner upon a highway, public road, street or any other place open to the public generally."); Tenn. Code Ann. § 44-8-413(a)(1) ("The owner of a dog has a duty to keep that dog under reasonable control at all times, and to keep that dog from running at large."). The Lowerys' decision to fence their dogs may be a result of Tennessee law or any other number of considerations. It is patently unreasonable to assume that their decision to fence their dogs in compliance with state law, without more, is somehow evidence that the dogs were dangerous.

We likewise cannot conclude that a genuine dispute of material fact was created by Mrs. Lowery's admission that she never left Aiden alone in the yard with the dogs prior to the incident at issue. Here, Mrs. Lowery testified that she had never previously allowed Aiden to be unsupervised with the dogs in her backyard and that she intended to supervise Aiden outside immediately but was delayed about three minutes, at which point the incident occurred. What this evidence does not establish, however, is that Mrs. Lowery's decision was in any way based on a fear that the dog at issue was dangerous. Indeed, Mrs. Lowery testified that Aiden was typically under her supervision at all times both in and outside the house. It is nothing more than speculation to suggest that Mrs. Lowery's supervisory decisions were based on some belief or suggestion that the dog could be dangerous. Thus, the trial court correctly ruled that this evidence does nothing more than create "metaphysical doubt" as to the material facts. *Rye*, 477 S.W.3d at 265.

- 14 -

As we perceive it, Appellants essentially argue that if their evidence is insufficient, then the Dog Bite Statute places an insurmountable burden on them that cannot be overcome without direct proof of actual knowledge by the owner. Appellants point out that our prior cases involving the statute focus on the owner's actual knowledge, rather than any imputed knowledge. And as Appellants explains, "[i]f the owner moves for summary judgment with his or her own affidavit stating that the dog had not acted dangerously before, as the owner did here, it appears that the injured party would have to come up with some specific facts to challenge that assertion." Appellants contend that it is "quite difficult" to meet this burden, particularly when relying on circumstantial evidence of imputed knowledge. As Appellants explain, "Must a plaintiff locate and depose the dog owner's mailman or pizza delivery person to see if the dog has ever acted aggressively towards them? Should plaintiff try to track down every visitor to the home?" Appellants therefore direct this Court to "establish precedent that makes it easier for plaintiffs to survive summary judgment based on circumstantial evidence that lends to showing the dog owner should have known of the dangerous propensities of their pet[.]"

Respectfully, it is clear that the Tennessee General Assembly intended to place a burden on injured parties who seek to hold dog owners liable for injuries that occurred on residential property. *See generally* Tenn. Code Ann. § 44-8-413(c). It is not the purview of this Court to ease a burden established by the Tennessee General Assembly. Moreover, a recent case indicates that the burden of section 44-8-413(c) is not insurmountable, even when the plaintiff relies on circumstantial evidence, rather than proof of a prior bite by the dog in question. Specifically in ***Munoz v. Sepulveda***, the plaintiff was injured when she went to the defendant's property to purchase a lamb. 2025 WL 2603041, at *1. When she arrived, she approached a pen holding at least two dogs when Suki, a Great Pyrenees, bit the plaintiff on her hand. ***Id.***

In the course of the lawsuit that followed, the defendant filed a motion for summary judgment arguing that the plaintiff could not establish that he knew or should have known of the dog's dangerous propensities under the Dog Bite Statute. In support of this motion, the defendant relied on his own affidavit that the dog "had never bitten anyone or exhibited dangerous tendencies." ***Id.*** The trial court ultimately granted the motion, and the plaintiff appealed to this Court. ***Id.*** at *1–2.

On appeal, the plaintiff argued that she met her burden to establish that the defendant either knew or should have known of the dog's dangerous propensities, pointing to (1) the fact that the defendant placed a beware of dog sign on the defendant's property; (2) the defendant testified that the dog was protective of his other animals; (3) the fact that the defendant allowed the dog to be euthanized after the incident because Suki "didn't know how to be with other people"; and (4) a visitor to the defendant's home prior to the incident testified that the dog growled at her and showed "its teeth in an aggressive manner," with the defendant aware that the dog acted this way toward her. ***Id.*** at *4. The defendant argued, however, that these facts amounted to nothing more than notice that the dog had a

- 15 -

propensity to growl at strangers. In other words, the defendant argued that without evidence to show that the defendant knew or should have known that the dog would bite a stranger, the plaintiff could not meet her burden. *Id.*

We rejected the defendant's arguments and concluded that the plaintiff met her burden under the Dog Bite Statute. Indeed, we held that evidence that the dog was protective, did not know how to interact with people, and growled at and showed its teeth to strangers was "sufficient to hold that a dog owner had knowledge or should have had knowledge that his or her dog was vicious and might bite someone." *Id.* at *6. We therefore held that it was not necessary for the plaintiff to demonstrate that the dog had previously bitten someone, only "that it has on other occasions exhibited such a tendency to attack human beings or other animals or otherwise to do harm as should apprise [the dog's owner] of its dangerous character." *Id.* (quoting *Fletcher v. Richardson*, 603 S.W.2d 734, 736 n.1 (Tenn. 1980) (quoting Restatement, *Second, of Torts* § 509, comment g at 17–18 (1977))). So then, we held that there was sufficient evidence to question the defendant's credibility when he denied any knowledge of facts that should have put him on notice of the dog's dangerous propensities. *Id.* (citing *Knapp v. Holiday Inns, Inc.*, 682 S.W.2d 936, 942 (Tenn. Ct. App. 1984)). Because there were genuine disputes of material fact, we reversed the grant of summary judgment and remanded for further proceedings. *Id.* at *7.

Thus, the plaintiff in *Munoz* was faced with exactly the same burden Appellants find so difficult here: how to rebut an affidavit from the dog's owner that he had no knowledge of the dog's dangerous propensity. But Appellants have presented none of the type of evidence relied upon by the plaintiff in *Munoz*. Appellants have presented no evidence that the Lowerys made comments indicating a belief that the dog could be dangerous. Appellants have also failed to present any evidence that the dog ever acted in an aggressive manner prior to the incident, by way of being protective over the other animals in the home, growling, showing teeth, or otherwise. Instead, we are left only with the following fact, which was agreed to by Appellants:

> At no time prior to the alleged attack had any of the defendants heard about or become aware of any vicious, dangerous or aggressive propensities in the dog in question, towards people or other animals. The defendants had never heard or been aware of the dog growling, snapping or otherwise exhibiting an ill temper towards any other creature. The dog in question always exhibited an affable and friendly demeanor in the defendants['] presence and prior to the date of the incident, defendants were not aware of any behavior to the contrary.

In the absence of any evidence to the contrary, this undisputed and agreed-to fact controls the outcome of this litigation. The trial court therefore did not err in granting summary judgment in favor of the Lowerys as Appellants failed to demonstrate, at the summary

judgment stage, that they could produce evidence to establish an essential element of their claim.

## V. CONCLUSION

The judgment of the Shelby County Circuit Court is affirmed, and this cause is remanded to the trial court for further proceedings consistent with this Opinion. Costs of this appeal are taxed to Appellants, Aiden M., a minor by and through natural parents and guardians, Amanda and Adam M., for which execution may issue if necessary.


s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE