IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 16, 2025 Session

## REGINA SESSEL, ET AL. v. N.J. FORD AND SONS FUNERAL HOME, INC., ET AL.

Appeal from the Circuit Court for Shelby County
No. CT-3761-19     Valerie L. Smith, Judge

_____

### No. W2024-00587-COA-R3-CV

_____

This appeal involves allegations of the mishandling of a dead human body by the funeral home and cemetery responsible for its final disposition. The decedent's mother brought tort and breach of contract claims based on her assertion that the decedent's body had been cremated rather than buried. The trial court granted summary judgment to both defendants on all claims. The mother appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which ANDY D. BENNETT, J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Terrell L. Tooten, Memphis, Tennessee, for the appellant, Regina Sessel, individually and in her capacity as the guardian of the decedent's minor children, M.E. Dewberry, M.A. Dewberry, M.D. Dewberry, and M.N. Dewberry.

John H. Dotson and Christina Guyton, Memphis, Tennessee, for the appellee, New Park Cemetery, Inc.

Albert G. McLean and Kevin D. Bernstein, Memphis, Tennessee, for the appellee, N.J. Ford and Sons Funeral Home, Inc.

### MEMORANDUM OPINION[1]

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall

# I. Facts & Procedural History

This appeal involves allegations of the mishandling of a dead human body by the following defendants: (1) N.J. Ford and Sons Funeral Home, Inc. ("The Funeral Home"); and (2) New Park Cemetery, Inc. ("the Cemetery").

Muwani Dewberry ("the Decedent") died from gunshot wounds on December 31, 2016. His death was ruled a homicide. Shortly thereafter, the Decedent's mother, Regina Sessel ("Mother"), entered into a contract with the Funeral Home for performance of a funeral service, use of facilities, and other funeral related services. Mother entered into a separate contract with the Cemetery for the purchase of one burial plot and one opening and closing of said burial plot. The funeral took place on January 7, 2017. During the funeral, the Decedent's remains were observed inside of a casket. The casket was closed, and after the service, Mother and the other guests observed the casket as it was loaded into a hearse. Mother and several other attendees followed the hearse to the Cemetery where the casket was unloaded and placed "on a gazebo." The graveside portion of the service then took place. Afterward, Mother was informed that the casket would not be buried that day as the ground was too cold to dig the grave. Mother and the other attendees left the Cemetery without seeing the casket lowered into the burial plot.

Roughly a year later, during either March or April 2018, Mother received an investigative report generated by the Office of the Shelby County Medical Examiner concerning the Decedent. This report contained a field labeled, "Cremation Approved." This field was marked "Yes." Shortly thereafter, Mother contacted an attorney. Mother also contacted a local news station, WREG News, and informed it of the situation. It appears that WREG News contacted the Funeral Home, but there are no accounts of the conversation that took place contained in the record.

On August 24, 2019, Mother filed a complaint, listing herself as a plaintiff in both her individual capacity and in her capacity as the guardian of the Decedent's four children. Mother asserted claims of conversion, breach of contract, negligence, and fraud throughout the complaint. Both the Funeral Home and the Cemetery filed answers, and the parties engaged in litigation and discovery over the ensuing years.

During this time, Mother was deposed. Mother recounted the events of the funeral service and maintained that, afterwards, she was informed the casket could not be buried that day. She explained that she believed the Decedent's remains were later buried but she became concerned when she received an investigative report prepared by the Office of the

be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

Shelby County Medical Examiner that referenced cremation. She claimed that this report demonstrated that "someone involved with N.J. Ford and their funeral home, between the funeral home and the cemetery cremated my son." She went on to say, "I don't know. I can't tell you. I just know that I got this piece of paper stating that my son was cremated." She was asked what evidence she had to support this allegation and she responded, "[j]ust this paperwork and the death certificate."

Dr. Marco Ross was also deposed. Dr. Ross served as the Chief Medical Examiner for Shelby County and as a forensic pathologist at West Tennessee Regional Forensic Center ("the Forensic Center"). At the time of the deposition, Dr. Ross had been serving as the Chief Medical Examiner for two years. Dr. Ross was provided with the investigative report and the Decedent's death certificate. He testified that, while he was unfamiliar with the Decedent's documents, he was familiar with "the way that these documents are filled out[.]" Dr. Ross reviewed the death certificate first. He noted that the "Method of Disposition" for Decedent was listed as "burial." He explained that multiple entities contribute to the generation of a death certificate. He stated that this portion of the certificate was typically completed by the funeral home. He clarified that, in accordance with the standard process in place at the time, the portion of the document completed by the medical examiner would have likely been completed prior to the funeral home having completed its portion of the document. Dr. Ross also reviewed the investigative report. He was asked to explain what the "Yes" listed in the "Cremation Approved" section of the report indicated. He stated that this box being labeled "Yes" indicated that, if a family desired to proceed with the cremation of a body, it would be permitted to do so. He described this as "essentially pre-approval" for cremation as the Forensic Center would at that point be "done with [its] aspect of examination, so there [would be] nothing that a cremation would affect [in] [its] investigation." He maintained that this was not "authority by the Forensic Center to the funeral home to cremate the body[.]"

Shortly after Dr. Ross's deposition, both the Funeral Home and the Cemetery filed motions for summary judgment as to each of the claims levied in the complaint. Both defendants argued that the testimony of Dr. Ross left the plaintiff unable to prove the Decedent's remains had been cremated rather than buried. They argued that the plaintiff was required to prove this fact in order to recover on her claims, and the inability to do so rendered summary judgment appropriate. In addition to the depositions and documentary evidence, both defendants also submitted statements of undisputed facts, which were answered by the plaintiff.

On December 4, 2023, the trial court conducted a hearing on the motions. The trial court first acknowledged the plaintiff's claim that the testimony of Dr. Ross was inadmissible due to a lack of personal knowledge. The trial court overruled this objection noting that the purpose of Dr. Ross's testimony was intended to explain "what is normally customarily done with regard to checking a box that says ready for cremation." The trial court found that, when considering this testimony, there was "no proof that checking a box

doesn't just mean when this [report] goes, that it's okay to do that. There's just no proof here." The trial court determined that there had "been nothing put forward to show that" the Decedent had been cremated rather than buried. Accordingly, the trial court found that summary judgment was appropriate. This finding was preserved in two written orders, both of which were entered on December 19, 2023. In its order granting summary judgment to the Funeral Home, the trial court found that the plaintiff had "failed to affirmatively establish the allegations made in [the] Complaint and arguments made [were] speculative and argumentative but not admissible proof." In its order granting summary judgment to the Cemetery, the trial court found that the plaintiff had "provided no evidence at the time of the summary judgment hearing as to any disputed fact." On January 18, 2024, the plaintiff filed a "Motion to Alter or Amend or Make additional Findings of Fact." This motion was denied on March 22, 2024. Subsequently, the plaintiff filed this appeal.

## II. Issue Presented

The appellant has presented the following issue on appeal, which we have slightly reworded:

1. Whether the trial court erred when it granted summary judgment in favor of the appellees.

For the following reasons, the judgment of the trial court is affirmed.

## III. Discussion

Our state rules of civil procedure provide that summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. "The moving party has the burden of proving that its motion satisfies these requirements." *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000). "To do so, the moving party must either affirmatively negate an essential element of the nonmoving party's claim or show that the nonmoving party cannot prove an essential element of the claim at trial." *Mershon v. HPT TA Props. Tr.*, No. M2023-01334-COA-R3-CV, 2024 WL 4471404, at *4 (Tenn. Ct. App. Oct. 11, 2024), *perm. app. denied* (Tenn. Mar. 13, 2025) (citing *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008)). Regardless of whether the nonmoving party bears the burden of proof at trial on the challenged claim, "at the summary judgment stage, '[t]he nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.'" *TWB Architects, Inc. v. The Braxton, LLC*, 578 S.W.3d 879, 889 (Tenn. 2019) (quoting *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 265 (Tenn. 2015)). When reviewing a motion for summary judgment, a court places its focus "on the evidence the nonmoving party comes forward

with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced" at a future trial. *Rye*, 477 S.W.3d at 265.

The decision to grant or deny "a motion for summary judgment is a matter of law; therefore, our standard of review is *de novo* with no presumption of correctness." *Jackson v. Thibault*, No. E2021-00988-COA-R3-CV, 2022 WL 14162828, at *3 (Tenn. Ct. App. Oct. 25, 2022). "In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Rye*, 477 S.W.3d at 250. However, "we are required to review the evidence in the light most favorable to the nonmoving party and to draw all reasonable inferences favoring the nonmoving party." *Martin*, 271 S.W.3d at 84. Notably, the appellant's arguments on appeal also involve the decision of the trial court to accept Dr. Ross's testimony as evidence. We review a trial court's decision to accept expert testimony under the abuse of discretion standard. *Shipley v. Williams*, 350 S.W.3d 527, 552 (Tenn. 2011).

To begin, we address whether the trial court's orders satisfy the portion of Tennessee Rule of Civil Procedure 56.04 that requires the trial court to "state the legal grounds upon which the court denies or grants the motion" and to include this statement "in the order reflecting the court's ruling." Tenn. R. Civ. P. 56.04. The parties have not raised this issue on appeal. However, compliance with this issue "may be raised *sua sponte* 'even if neither party specifically designates it as an issue on appeal.'" *Kherani v. Patel*, No. E2022-00983-COA-R3-CV, 2023 WL 6307502, at *8 (Tenn. Ct. App. Sept. 28, 2023) (quoting *Calzada v. State Volunteer Mut. Ins. Co.*, No. M2020-01697-COA-R3-CV, 2021 WL 5368020, at *6 (Tenn. Ct. App. Nov. 18, 2021)). The Tennessee Supreme Court has emphasized "the fundamental importance of assuring that a trial court's decision either to grant or deny a summary judgment is adequately explained[.]" *Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 314 (Tenn. 2014). *See also Boyd v. Gibson*, No. W2020-01305-COA-R3-CV, 2022 WL 95167, at *4 (Tenn. Ct. App. Jan. 10, 2022) ("Naturally, in order for this Court to ascertain whether an error in the trial court's summary judgment ruling exists, we must first understand the basis for the court's judgment."). However, the Court has also recognized that it is appropriate to proceed in some cases where the order does not contain a sufficient statement of the trial court's grounds, but the absence of such grounds "does not significantly hamper the review of the trial court's decision." *Lakeside*, 439 S.W.3d at 314.

The trial court entered two separate orders in which it granted summary judgment to the appellees. Both orders span about one and one-half pages. The order granting summary judgment to the Funeral Home provides that:

> [p]laintiff has failed to affirmatively establish the allegations made in her Complaint and arguments made are speculative and argumentative but not admissible proof.

Additionally, this Honorable Court finds that the personal injuries are timed [sic] barred under the applicable statute of limitations, given the accrual of the alleged injuries of the parent and Defendant has successfully demonstrated that the Plaintiff's evidence at the Summary Judgment stage is insufficient to establish Plaintiff's claims on the remaining causes of action, leading to the conclusion that the entire matter is dismissed against all defendants.

The order granting summary judgment to the Cemetery states that:

[p]laintiff did not persuasively dispute the Statement of Undisputed Material Facts filed by [the Cemetery] and Plaintiff provided no evidence at the time of the summary judgment hearing as to any disputed fact. Consequently, this Honorable Court finds that the personal injuries are timed [sic] barred under the applicable statute of limitations and Defendant has successfully demonstrated that the Plaintiff's evidence at the Summary Judgment stage is insufficient to establish Plaintiff's remaining claims. Therefore, this Court finds that there is no genuine issue of material fact and Defendant's Motion for Summary Judgment is hereby granted. (*See*, attached ruling transcript).

The orders do not outline the causes of action raised by the appellant or the elements required to prove them. The orders leave unclear what specific facts were established or could not be established by the appellant at trial that rendered them unable to prove these claims. The orders themselves also leave unclear whether the primary basis for the granting of summary judgment to the appellees was the appellant's inability to prove certain elements of their claims or the statute of limitations issue. Both orders begin by referencing the negation of the facts necessary to prove the appellant's claims but are quickly followed by discussions of the statute of limitations. Neither order explains when the statute of limitations began to run or at what point the appellant missed the filing deadline.

However, we recognize the difficult position that the trial court was placed in by the appellant's complaint and subsequent filings. It is difficult for a trial court to accurately recite a plaintiff's claims when the plaintiff has not taken the time to do so. The complaint lists "Conversion and Breach of Contract" in a subheading prior to the statement of alleged facts supporting its claims. Throughout the body of the complaint, "misrepresentation" is discussed. The complaint also alleged that the appellees had acted "fraudulently" and "[a]t bare minimum . . . were grossly negligent or reckless." Later, in her responses to the motions for summary judgment, the appellant again claimed that these causes of action were supported by the alleged facts. The appellant then identified several additional claims for the first time.[2] These included constructive fraud, unjust enrichment, civil conspiracy,

---

[2] A nonmoving party is not permitted to raise theories of recovery not preserved in the complaint in a response to a motion for summary judgment. *See Blackburn & McCune, PLLC v. Pre-Paid Legal*

- 6 -

intentional infliction of emotional distress, and negligent infliction of emotional distress. The appellant did not explain the facts supporting these claims. Rather, the claim is listed, defined, and followed by a conclusory statement such as "[t]his claim is supported." Some of the claims are not even defined but are merely listed.

Despite these challenging circumstances, we cannot say that the trial court's orders have adequately explained the legal basis for its decision to grant summary judgment. There is no explanation of what specific facts that the appellant was unable to prove and therefore left her unable to prove specific elements of her claims. As such, "we are left with two alternatives: vacate the order and remand for further consideration by the trial court or conduct an 'archeological dig[ ]' if 'the basis for the trial court's decision can be readily gleaned from the record.'" *Kherani*, 2023 WL 6307502, at *10 (quoting *Lakeside*, 439 S.W.3d at 314). Here, good reason for conducting the summary judgment analysis exists because the trial court's reasons for granting summary judgment are readily apparent from the appellate record. The record contains a partial transcript of the summary judgment hearing. This transcript includes the portion of the hearing in which the trial court announced its decision and explained its reasoning.[3] *See White v. Pulaski Elec. Sys.*, No. M2007-01835-COA-R3-CV, 2008 WL 3850525, at *3 (Tenn. Ct. App. Aug. 18, 2008) (finding that the parties against whom summary judgment had been granted were not prejudiced by a defective order where "the basis of the ruling [could] be readily found in the record of the hearing transcript, the pleadings, the responses, and the affidavits").

During the summary judgment hearing, the trial court addressed the evidence submitted by both parties. The trial court noted that the appellant's responses to the statements of undisputed facts were largely "without specific citations to the record" and many of the answers that did cite to the record cited only to the appellant's complaint and interrogatory answers. The trial court noted that the appellant objected to Dr. Ross's testimony based on a lack of personal knowledge of the investigative report and death certificate. *See* Tenn. R. Evid. 602. The trial court found that the subject of Dr. Ross's testimony did not require personal knowledge of the specific forms entered as evidence, but rather, pertained to the issue of "what is normally customarily done with regard to checking a box that says ready for cremation." The trial court then found that there was "no proof that checking a box doesn't just mean when [the form is issued] that it's okay to [cremate the body]. There's just no proof here." The trial court further explained that "[t]he argument that this is not outside the realm of possibility that this could happen is not sufficient at the summary judgment stage." The trial court also noted that the plaintiff had not sought to have the remains exhumed to prove they had been cremated.[4] The trial court

---

*Services, Inc.*, 398 S.W.3d 630, 661 (Tenn. Ct. App. 2010). Further discussion of the effects of the appellant's decisions regarding how and when to attempt to raise various claims is contained below.

[3] Notably, one of the orders granting summary judgment references this oral ruling. It is unclear whether the trial court intended to incorporate these oral findings into the final order. The order granting summary judgment to the Funeral Home does not contain any reference to the oral ruling.

[4] At oral argument, counsel for the appellant claimed that Mother made a request for the Decedent's

- 7 -

then stated that summary judgment was appropriate. Clearly, the trial court intended to grant summary judgment because the appellees demonstrated that the appellant's evidence was insufficient to establish that the Decedent's remains had been cremated rather than buried. The trial court obviously deemed this a fact that the appellant was required to prove in order to prevail on each cause of action. Having ascertained the trial court's reasons for granting summary judgment, we will conduct a *de novo* review of the record to determine whether the grant of summary judgment was proper.

Moving now to our own assessment of the evidence for summary judgment purposes, it is helpful to first identify the causes of action upon which summary judgment was granted. Similar to the difficult position in which the appellant placed the trial court, the appellant has likewise failed to provide a concise list of the causes of action for which she seeks appellate review. Despite the litany of claims referenced in the complaint, the appellant argues only two claims on appeal.[5] These include the breach of contract and fraud claims. We will review the grant of summary judgment as to only these causes of action. We deem any arguments regarding other causes of action that may have been raised in the complaint as waived pursuant to Tennessee Rule of Appellate Procedure 27(a)(7). *See also Sneed v. Bd. of Pro. Resp. of Supreme Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010) (stating that "where a party fails to develop an argument in support of his or her contention . . . the issue is waived").

*(1) Breach of Contract*

The appellant lists two theories of recovery for the breach of contract claim on appeal. The first theory is that the contract was breached by one or both of the appellees cremating the Decedent's remains rather than burying them. This theory was contained in the complaint and has been consistently argued since that time. The second theory is that the contract was breached by the failure of the appellees to permit the funeral attendees to observe the casket being lowered into the burial plot. This theory regarding observation of the interment is the only claim on appeal that is not predicated on the appellant proving the Decedent was cremated rather than buried. However, this theory of recovery was not raised in the complaint. Rather, the issue was raised for the first time in the appellant's response to the appellees' motions for summary judgment. This is not the proper method for introducing a new theory of recovery arising from a cause of action listed in one's complaint. *See Tolliver v. Tellico Vill. Prop. Owners Ass'n, Inc.*, 579 S.W.3d 8, 26 (Tenn. Ct. App. 2019) ("The proper method of introducing a new theory of recovery arising from the same cause of action is to amend one's complaint.") *See also Blackburn*, 398 S.W.3d

---

remains to be exhumed. There is nothing in the record to support this assertion.

[5] As stated above, many claims are referenced for the first time in the response to the motions for summary judgment. This is not the proper method of raising new causes of action not raised in one's complaint. *See Blackburn*, 398 S.W.3d at 661. Therefore, even if these causes of action had been argued in the appellant's brief, we would not consider them on appeal.

at 661 (finding that "a plaintiff may not raise a new theory of recovery for the first time in response to the defendants' motion for summary judgment" but instead "[t]he proper procedure [is] to seek to the [sic] amend the complaint to assert this alternative form of relief"). Additionally, there is nothing demonstrating that the parties argued this claim with any great ardor at the trial court level. The responses to the motion for summary judgment were filed on October 30, 2023. The hearing on the motions was initially set for November 1, 2023, but was reset for December 4, 2023. No briefing or other memorandum arguing the parties' positions were entered during that intervening time. Additionally, nothing contained in the trial court's written or oral ruling pertain to this issue. Therefore, because the appellant raised this theory of recovery for the first time in their responses to the motions for summary judgment, we will not consider it on appeal. *See Blackburn*, 398 S.W.3d at 661 (Finding "no error in the trial court's failure to address" an alternative theory of recovery where that theory "was raised for the first time in its opposition to the [moving parties'] motion for summary judgment").

"In order to make a prima facie case for a breach of contract claim, a plaintiff must allege: '(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract.'" *Tolliver*, 579 S.W.3d at 25 (quoting *C & W Asset Acquisition, LLC v. Oggs*, 230 S.W.3d 671, 676-77 (Tenn. Ct. App. 2007)). The parties do not dispute that Mother entered into valid contracts with both of the appellees. Instead, the parties' arguments pertain to whether these contracts were breached in some way.

The appellant claims that one, or both, of the appellees breached their contracts by cremating the Decedent's remains rather than burying them. She claims that a genuine issue of fact exists regarding whether the Decedent's remains were cremated or buried. The appellant points to two pieces of evidence to support their claim that the Decedent's remains were cremated: (1) the investigative report containing the "Cremation Approved" notation and (2) the purported communication between WREG News and the funeral home. The appellant argues that the investigative report had probative value because Dr. Ross was "not qualified [to testify] and [could] not make a disputed fact regarding the issue of whether the remains were cremated." The appellant also claims that "[o]n April 13, 2018, WREG [ ] reached out to the funeral home on [the appellant's] behalf and was informed by funeral home that they were trying to figure out what happened." The appellant claims that "[t]his definitely supports the claim that Appellees either cremated the remains, or have no idea what happened to the remains." Additionally, the appellant claims that "the trial court never conducted any analysis in a light most favorable to [the appellant] as to allegations on the contract or cremation."

Given its potential effect on the remainder of the analysis, we begin by addressing the appellant's claim the trial court did not review the evidence in the light most favorable to her. The appellant points to the portion of the trial court's oral ruling in which it stated that: "[w]e're here for a motion for summary judgment. I heard light most favorable used,

but that's the standard for a motion to dismiss rather than motion for summary judgment. Unless I've missed something, that's not the standard that we'll be using at this point." The appellant is correct that the evidence must be viewed in the light most favorable to her as the nonmoving party. *See Martin*, 271 S.W.3d at 84. However, the appellant does not cogently explain what evidence was not viewed in the light most favorable to her, or what determinations would have differed had a different standard been applied. As explained above, and as the trial court immediately stated after the comment cited by the appellant, after the moving party has met its burden of production, the appellant, even as the nonmoving party, was required to provide evidence demonstrating "the existence of specific facts in the record which could lead a rational trier of fact to find in" her favor. *Rye*, 477 S.W.3d at 265. Here, the appellees put forth evidence demonstrating that the appellant's evidence was "insufficient to establish" her claim by submitting the testimony of Dr. Ross to explain that the evidence relied on by the appellant did not have any probative value as to the issue of whether the Decedent's remains were cremated rather than buried. *See id.* at 264. At that point, as the trial court correctly noted, the appellant was required to respond by affidavit or another means contemplated in Tennessee Rule 56 to demonstrate that this was a genuine issue for trial. *Id.* at 265. Clearly, the trial court applied the *Rye* standard when ruling on the motions for summary judgment. Therefore, as the trial court applied the correct standard and the appellant has failed to explain what evidence was not viewed in the light most favorable to her, we discern no error in the standard applied by the trial court.

Turning now to the evidence relied on by the appellant, she first submits that the notation of "Cremation Approved" serves as evidence that the Decedent's remains were cremated. However, as noted above, the appellees submitted the testimony of Dr. Ross to explain the "Cremation Approved" notation. Dr. Ross was asked specifically what the "Yes" listed under "Cremation Approved" indicated. Dr. Ross explained, "it is sort of essentially pre-approval. It means that we are done with our aspect of examination, so there is nothing that a cremation would affect our investigation." Dr. Ross also clarified that this was not "authority by the Forensic Center to the funeral home to cremate the body." This testimony demonstrates that the evidence provided by the appellant does not have any probative value demonstrating that the Decedent's remains were cremated rather than buried.

The appellant does not dispute the effect that this testimony had on the probative value of the investigative report. Rather, she claims that Dr. Ross was not competent to testify because he did not have any personal knowledge related to the completion of the investigative report in question. *See* Tenn. R. Evid. 602. However, the appellant has not addressed the trial court's determination that Dr. Ross's testimony did not require personal knowledge of this particular report because his testimony pertained to the general process of producing the same type of report and the meanings that the listed fields carried. Likewise, the appellant has put forth no argument explaining why Dr. Ross was not competent to testify regarding the process of completing these documents. The appellant simply avoids the finding altogether and provides no explanation as to why Dr. Ross's

testimony required personal knowledge of the specific documents at issue. Conversely, the trial court clearly had good reason to determine Dr. Ross was qualified to testify. He was serving as the Chief Medical Examiner of Shelby County, had many years of experience working at the Forensic Center generating these types of reports, and was familiar with the process of completing these types of reports. Nothing in the record indicates that the trial court abused its discretion by accepting Dr. Ross's testimony on this issue.

Next, we consider the appellant's assertion that the Funeral Home informed WREG News "that they were trying to figure out what happened" somehow "supports the claim that Appellees either cremated the remains, or have no idea what happened to the remains." It may be more apt to say that we *would consider* this assertion, but nothing is contained in the record preserving the details of this purported communication. The only evidence contained in the record regarding this incident is the testimony of Mother, in which she claimed to have "called the news people because of" the investigative report she received. She did not explain what actions WREG took or the response of the Funeral Home. The trial court did not address this evidence in its oral or written rulings. Therefore, this evidence is not proper for consideration on appeal. Nevertheless, even if we were to assume *arguendo* that these events occurred, there is no logical connection between the Funeral Home stating it was "trying to figure out what happened" and the Decedent having been cremated. Surprisingly, the appellant has not attempted to explain that connection.

Having reviewed the record, we agree with the trial court's determination that the appellant failed to point to any evidence demonstrating "the existence of specific facts in the record which could lead a rational trier of fact to find in" their favor on the breach of contract claim. *See Rye*, 477 S.W.3d at 265. Therefore, summary judgment was appropriately granted to both appellees on this cause of action.

*(2) Fraud*

The appellant also claims that the pleaded facts support a claim for fraud. As we have previously explained:

> [u]nder Tennessee law, in order to prevail on a claim based on fraud, a plaintiff must show the following: (1) an intentional misrepresentation with regard to a material fact; (2) knowledge of the representation's falsity (i.e., it was made "knowingly" or "without belief in its truth," or "recklessly" without regard to its truth or falsity); (3) the plaintiff reasonably relied on the misrepresentation and suffered damage; and (4) the misrepresentation relates to an existing or past fact, or, if the claim is based on promissory fraud, the misrepresentation "must embody a promise of future action without the present intention to carry out the promise."

*Mitchell v. Morris*, No. E2015-01353-COA-R3-CV, 2016 WL 890212, at \*8 (Tenn. Ct. App. Mar. 9, 2016) (quoting *Shahrdar v. Global Housing, Inc.,* 983 S.W.2d 230, 237 (Tenn. Ct. App. 1998)). The purported fraud was predicated upon the assertion that the appellees cremated the Decedent's remains instead of burying them. As explained above, appellant has failed to put forth evidence demonstrating that a factual question exists regarding the disposition of the Decedent's remains. *See Rye*, 477 S.W.3d at 265. This fact served as the basis for the intentional misrepresentation required to establish a claim for fraud. Therefore, the appellant is unable to establish each of the elements of a prima facie fraud claim. Accordingly, we find that the appellees were also entitled to summary judgment on this cause of action. Having reviewed the record, we find that the trial court did not err when it granted summary judgment to both appellees based on the failure of the appellant to put forth evidence demonstrating the existence of specific facts which could lead a rational trier of fact to rule in her favor. *See Rye*, 477 S.W.3d at 265. Therefore, we affirm.

Additionally, the trial court discussed the statute of limitations issue in its final orders. However, as we have already determined that summary judgment was appropriate on independent grounds, this issue is pretermitted. Similarly, the appellees raised an issue of standing in relation to claims brought on behalf of the minors. This issue is also pretermitted.

## IV. Conclusion

For the foregoing reasons, the ruling of the trial court is affirmed. Costs of this appeal are taxed to the appellant, Regina Sessel, individually and in her capacity as the guardian of the decedent's minor children, M.E. Dewberry, M.A. Dewberry, M.D. Dewberry, and M.N. Dewberry, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE